# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Torvent LLC, | §§ | |
| | §§ | |
| Plaintiff, | §§ | C.A. No. 1:21-cv-00853-JPM |
| | §§ | |
| v. | §§ | C.A. No. 1:22-cv-01617-JPM |
| | §§ | |
| Techtronic Industries Co., Ltd.; Techtronic Industries North America, Inc.; One World Technologies, Inc.; Homelite Consumer Products, Inc.; Hart Consumer Products, Inc.; Home Depot, U.S.A. Inc.; and Walmart Inc., | §§ §§ §§ §§ §§ §§ | **JURY TRIAL DEMANDED** [Public Version] |
| | §§ | |
| Defendants. | §§ | |
| | §§ | |
| and | §§ | |
| | §§ | |
| Techtronic Industries Co., Ltd.; Techtronic Industries North America, Inc.; One World Technologies, Inc.; Homelite Consumer Products, Inc.; Hart Consumer Products, Inc., | §§ §§ §§ §§ §§ | |
| | §§ | |
| Counterclaim Plaintiffs, | §§ | |
| v. | §§ | |
| | §§ | |
| Torvent, LLC; Torvian, Inc.; and First-to-Invent, LLC, | §§ §§ | |
| | §§ | |
| Counterclaim Defendants. | §§ | |

## JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT

Dated: June 16, 2023

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

MORGAN, LEWIS & BOCKIUS LLP

Amy M. Dudash (DE Bar No. 5741)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Phone: 302.574.3000
Fax: 302.574.3001
amy.dudash@morganlewis.com

rgolden@bayardlaw.com

Brian A. Carpenter
Theodore G. Baroody
J. Miguel Hernandez
CARSTENS, ALLEN & GOURLEY, LLP
7500 Dallas Parkway, Suite 300
Plano, Texas 75024
(972) 367-2001
(972) 367-2002 Fax
carpenter@caglaw.com
baroody@caglaw.com
hernandez@caglaw.com

ATTORNEYS FOR PLAINTIFF
TORVENT LLC AND THIRD-PARTY
COUNTERCLAIM CO-DEFENDANTS
TORVIAN, INC. AND FIRST-TO-INVENT,
LLC

Jason C. White (admitted *pro hac vice*)
Nicholas A. Restauri (admitted *pro hac vice*)
Michael T. Sikora (admitted *pro hac vice*)
Eugene S. Hwangbo (admitted *pro hac vice*)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
Phone: 312.324.1000
Fax: 312.324.1001
jason.white@morganlewis.com
nicholas.restauri@morganlewis.com
michael.sikora@morganlewis.com
eugene.hwangbo@morganlewis.com

Robert Ehrlich (admitted *pro hac vice*)
1000 Louisiana St., Suite 4000
Houston, TX 77002-5006
Telephone: 713.890.5000
Fax: 713.890.5001
robert.ehrlich@morganlewis.com

*Attorneys for Defendants, Techtronic
Industries Co., Ltd.; Techtronic Industries
North America, Inc.; One World
Technologies, Inc.; Homelite Consumer
Products, Inc.; Hart Consumer Products,
Inc., Defendant Home Depot, U.S.A., Inc.,
and Defendant Walmart Inc.*

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    ii

## TABLE OF CONTENTS

I. TORVENT OPENING BRIEF .................................................................................. I
    A. BACKGROUND ..................................................................................... i

    B. NO CONSTRUCTION OF THE D321 PATENT IS REQUIRED ...................... 2

    C. THE D321 PATENT IS NOT INDEFINITE ............................................ 4

    D. ENABLEMENT CANNOT PROPERLY BE CONSIDERED IN THE
       CONTEXT OF CLAIM CONSTRUCTION .................................... 11

II. DEFENDANTS' RESPONSIVE BRIEF REGARDING THE D321 PATENT ............. 12
    A. INTRODUCTION ................................................................... 12

    B. THE D321 PATENT IS INDEFINITE AND NON-ENABLED UNDER 35
       U.S.C. § 112 .................................................................. 14

         1. THE D321 PATENT'S FIGURES SHOW IRRECONCILABLE
            INCONSISTENCIES ................................................ 14

         2. THE D321 PATENT'S INCONSISTENCIES RENDER IT INVALID
            .................................................................. 18

    C. THE D321 PATENT AND D893 PATENT SHOULD BE CONSTRUED NOW .
       .................................................................. 23

    D. IF NOT INDEFINITE, THE D321 PATENT SHOULD BE VERBALLY
       CONSTRUED ................................................................ 25

         1. THE D321 PATENT DEPICTS MULTIPLE FUNCTIONAL
            FEATURES ................................................ 25

         2. DEFENDANTS' PROPOSED VERBAL CONSTRUCTION
            SHOULD BE ADOPTED ................................ 27

III. TORVENT'S REPLY POSITION ...................................................... 32
    A. SUMMARY ................................................................ 32

    B. THE MERE PRESENCE OF DRAWING INCONSISTENCIES DOES NOT
       RENDER A DESIGN PATENT INVALID AS INDEFINITE .......................... 35

    C. APPLYING THE CORRECT LAW, THE ALLEGED FOUR (MIS-
       LABELLED AS FIVE) INCONSISTENCIES DO NOT RENDER THE CLAIM
       INVALID. ................................................................ 42

    D. VERBAL CLAIM CONSTRUCTION IS NOT NECESSARY AT THIS STAGE
       OF THE CASE ........................................................ 49

JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT        iii

      **E.   CONCLUSION** ................................................................................ 54

**IV.   DEFENDANTS SUR-REPLY POSITION** ................................................................ 54
      **A.   INTRODUCTION** ............................................................................ 54

      **B.   THE D321 PATENT IS INVALID AS INDEFINITE AND NON-ENABLED** . 55

            **1.   THE D321 PATENT UNDISPUTEDLY SHOWS INCONSISTENCIES** .............................................................. 55

            **2.   UNDER THE PERSPECTIVE OF THE ORDINARY OBSERVER, THE INCONSISTENCIES ARE MATERIAL** ................................... 55

            **3.   TORVENT'S REBUTTAL ARGUMENTS ARE INAPPOSITE** ...... 58

      **C.   IF NOT INDEFINITE, THE COURT SHOULD CONSTRUE THE D321 AND D893 PATENTS AS DEFENDANTS PROPOSE** ............................................... 61

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**           iv

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Antonious v. Spaulding & Evenflo Cos., Inc.,* No. 98- 1478*,* 1999 U.S. App. LEXIS 22984, 25 *(*Fed. Cir. Aug. 31, 1999) .................................................................................................. 5

*Apple, Inc. v. Samsung Elecs Co*., 920 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2013) ................. 53

*Arminak v. Saint-Gobain Calmar*, 501 F.3d 1314, 1319-21 (Fed. Cir. 2007) ............................. 29

*Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F. 3d 1374, 1379 (Fed. Cir. 1999) .................... 11

*B.J. Servs. Co. v. Halliburton Energy Servs.*, 338 F. 3d 1368, 1371 (Fed. Cir. 2003) ................ 12

*Blum*, 374 F.2d 904, 907 (C.C.P.A. 1967) .................................................................................... 20

*Boehringer Ingelheim Intern. v. Barr Laboratories, Inc*., 592 F 3d 1340, 1347 (Fed. Cir. 2010) ............................................................................................................... 53

*Crocs, Inc. v. Effervescent, Inc., et al.*, no. 06-cv-00605, *7 (D. Colo. March 11, 2021) ............. 9

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc*., 2016 WL 7017219, at *3 (C.D. Cal. Dec. 1, 2016) ........................................................................................................................................... 5

*DePaoli v. Daisy Mfg. Co., Inc.*, 2009 U.S. Dist. LEXIS 62057 (D. Mass. July 14, 2009) .......... 3

*Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 679-680 (Fed. Cir. 2008) (e*n banc*) .......... 2

*Eli Lilly & Co. v. Barr Labs., Inc*., 251 F.3d 955, 968 (Fed. Cir. 2001) ...................................... 10

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334 (Fed. Cir. 2015) ................. 4

*Ex Parte Asano*, 201 USPQ (BNA)(Nov. 27, 1978) ...................................................................... 5

*Fa-Hsing Lu v. Hyper Bicycles, Inc*., CA 20-11739-NMG, 2021 U.S. Dist. LEXIS 204906 (D. Mass. Oct. 25, 2021) ............................................................................................................ 3

*Gerber Garment Tech v. Lectra Systems*, 916 F.2d 683, 686 (Fed. Cir. 1990) ........................... 53

*Gordon Tantum, Inc. v. Chef Solutions, Inc.*, 2008 U.S. Dist. LEXIS 59025, * 23 – 24 (D. N.J. July 28, 2008) .......................................................................................................................... 51

*Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871) .......................................................................... 56

*Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041*,*1048 (Fed. Cir. 2001) ........................ 51

*Haddad v. United States*, 164 Fed. Cl. 28, 67 - 68 (Fed. Cl. 2023) ............................................... 12

*High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1314 (Fed. Cir. 2013) ............... 30

*HR US LLC v. Mizco Int'l, Inc.*, 2009 U.S. Dist. LEXIS 27056, *21- (EDNY March 2009) ..... 41

*Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003) ............................................ 5

*Jo-Ann, Inc. v. Alfin Fragrances, Inc.*, 731 F. Supp. 149, 156 (D. N.J. 1989) ............................. 51

*Junker v. Medical Components, Inc.*, 13-4606 (E.D. Penn. Jan. 4, 2009) ...................................... 7

*Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342-44 (Fed. Cir. 2020) ........................ 21

*Maatita*, 900 F.3d 1369, 1376 (Fed. Cir. 2018) ............................................................................ 5

*Masonite Corp. v. Craftmaster Mfg., Inc.*, No. 9-cv-2131, 2011 WL 13327344
    (N.D. Ill. Apr. 28, 2011) .......................................................................................................... 14

*Meduri Farms, Inc. v. Dutchtecsource B.V.*, 2017 U.S. Dist. LEXIS 199793, *19
    (D. Oregon December 5, 2017) ............................................................................................... 51

*Merck & Cie v. Watson Laboratories, Inc.*, 822 F.3d 1347, 1351 (Fed. Cir. 2018) ................... 51

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 215-16
    (Fed. Cir. Jan. 16, 2004) .......................................................................................................... 28

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) ........................................... 5

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ........................... 13

*Park B. Smith, Inc. v. CHF Indus., Inc.*, No. 06 Civ. 869(LMM)(JCF), 2008 U.S. Dist.
    LEXIS, *17 (S.D.N.Y. Mar. 6, 2008) ...................................................................................... 46

*Personalized Media Communs., LLC v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998) ..................... 12

*Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 68-69 (1998) ......................................................... 51

*Reddy v. Lowe's Companies, Inc.*, 60 F. Supp. 3d 249, 254 (D. Mass. 2014) ............................... 1

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) ................................. 27

*Schering Corp. v. Amgen, Inc.*, 18 F. Supp. 2d 372, n. 13 (D. Del. 1998) ................................... 12

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**

*Seed Lighting Design Co. v. Home Depot*, No. 04-cv-2291 SBA, 2005 WL 1868152, at *8 (N.D. Cal. Aug. 3, 2005) ................................................................................................ 14

*Skechers U.S.A., Inc. v. Nike, Inc.*, IPR2016-00871, p. 23 (PTAB Sept. 29, 2016) ...................... 9

*Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016)............................ 13

*Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991)................................ 53

*Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008) ............................ 4

*Times Three Clothier, LLC v. Spanx, Inc.*, Case Nos. 13-cv-2157, 13-cv-7260, 2014 WL 1688130, at *7–9 (S.D.N.Y. 2014) .......................................................................... 14

*UCB, Inc. v. KV Pharm. Co.*, 2009 U.S. Dist. 72764, *30 (D. Del. Aug. 18, 2009) .................... 12

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**

### INDEX OF APPENDIX

| Appendix Nos. | Exhibit No. | Description |
|---|---|---|
| APPX_00000001-APPX_00000008 | Exhibit AA | U.S. Patent 970,321 |
| APPX_00000009-APPX_00000024 | Exhibit A | Supplemental Declaration of Imack Laydera-Collins |
| APPX_00000025-APPX_00000071 | Exhibit B | Declaration of Paul Hatch |
| APPX_00000072-APPX_00000082 | Exhibit C | Attorney Declaration of Michael Sikora |
| APPX_00000083-APPX_00000097 | Exhibit D | Excerpts from Defendants' Second Supplemental Initial Invalidity Contentions |
| APPX_00000098-APPX_00000110 | Exhibit E | Excerpts from Prosecution History of U.S. Patent No. D814,893 |
| APPX_00000111-APPX_00000128 | | U.S. Patent 6,148,523 |
| APPX_00000129-APPX_00000137 | | U.S. Patent 6,952,877 |
| APPX_00000138-APPX_00000167 | | U.S Patent Application Publication 2005/0252009 ("Alliss") |
| APPX_00000168-APPX_00000196 | | U.S Patent Application Publication 2008/0052917 ("Proulx") |
| APPX_00000197-APPX_00000202 | | U.S Patent Application Publication 2008/0053052 ("Cigarini") |
| APPX_00000203-APPX_00000246 | | U.S. Patent 7,513,046 |

| APPX_00000247-<br>APPX_00000260 | | U.S Patent Application<br>Publication 2009/0260237<br>("Alliss") |
|---|---|---|
| APPX_00000261-<br>APPX_00000263 | | U.S. Patent 2,429,675<br>("Eypper") |
| APPX_00000264-<br>APPX_00000275 | | U.S. Patent Application<br>Publication 2012/0000079 |
| APPX_00000276-<br>APPX_00000313 | | International Patent WO<br>2015/144197 |
| APPX_00000314-<br>APPX_00000358 | | U.S. Patent Application<br>Publication 2015/0327436<br>("Skinner") |
| APPX_00000359-<br>APPX_00000365 | | Declaration of Brian A.<br>Carpenter |
| APPX_00000366-<br>APPX_00000397 | | Declaration of Fred P. Smith |

Pursuant to the Order of the Court, and agreement of the parties, dated March 17, 2021 [Dkt. 117], Plaintiff Torvent LLC ("Plaintiff" or "Torvent") and Defendants Techtronic Industries Co. Ltd. ("TTi Co."), Techtronic Industries North America, Inc. ("TTi NA"), One World Technologies, Inc. d/b/a/ Techtronic Industries Power Equipment ("TTi PE"), Homelite Consumer Products, Inc. ("Homelite"), Hart Consumer Products, Inc. ("Hart") (collectively, "TTi"), The Home Depot, U.S.A, Inc. ("Home Depot"), and Walmart Inc. ("Walmart") (collectively, "Defendants") hereby provide this Joint Claim Construction Brief.

The Asserted Design Patent is as follows:

| No. | U.S. Patent No. |
|-----|-----------------|
| 1   | D970,321        |

## I.   TORVENT OPENING BRIEF

### A.   BACKGROUND

The infringement claims regarding the D321 Patent were consolidated with the instant case by Order of the Court, and agreement of the parties, dated March 17, 2023 [Dkt. 117].  This Opening Claim Construction Brief is served pursuant to the same Order.  The primary issue with respect to this claim construction is whether the Court should require a verbal description of the figures of the design patent at issue versus relying on the figures themselves.  The Court has previously ruled on this same issue in this case regarding the similar D893 Patent as follows:

> While it appears that the Court will be required to provide a verbal construction of the D893 patent based on the representations of the Parties, it is premature to provide such a construction at this time. Many courts have held that verbal descriptions of a design patent are "more appropriate at a later stage of the litigation, such as summary judgment or jury instructions" rather than the claim construction stage in order to prevent placing "undue emphasis" on certain elements of the design. *Reddy v. Lowe's Companies, Inc.*, 60 F. Supp. 3d 249, 254 (D. Mass. 2014) (collecting cases). Accordingly, the Court will not provide a

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                    1

verbal description of the D893 Patent at this time, but the Parties may re-raise the
issue at a later time should it become necessary.

Dkt. 118 at p. 41 (March 20, 2023).  As before, Torvent again urges the Court to reject

Defendants' verbose proposed construction.  Again, as before, it is Torvent's position that the

jury should be simply provided with the drawings with no verbal description.

### B.   NO CONSTRUCTION OF THE D321 PATENT IS REQUIRED

| Torvent's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed. | Indefinite and non-enabled; otherwise verbally construe as provided in the Joint Claim Construction Chart [Dkt. 124]. |

The parties fundamentally disagree whether a description in words of the D321 Patent

(APPX_00000001) is necessary.  No such construction is required beyond the figures of the

patent itself in accordance with *Egyptian Goddess*, at least at this claim construction stage of the

litigation:

> As the Supreme Court has recognized, a design is better represented by an
> illustration "than it could be by any description and a description would probably
> not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14, 6
> S.Ct. 946, 30 L.Ed. 63 (1886). The Patent and Trademark Office has made the
> same observation. Manual of Patent Examining Procedure § 1503.01 (8th ed.
> 2006) ("[A]s a rule the illustration in the drawing views is its own best
> description."). Given the recognized difficulties entailed in trying to describe a
> design in words, **the preferable course ordinarily will be for a district court**
> ***not*** **to attempt to "construe" a design patent claim by providing a detailed**
> **verbal description of the claimed design**.

> With that said, it is important to emphasize that a district court's decision regarding
> the level of detail to be used in describing the claimed design is a matter within the
> court's discretion, and absent a showing of prejudice, the court's decision to issue a
> relatively detailed claim construction will not be reversible error. At the same time,
> **it should be clear that the court is not obligated to issue a detailed verbal**
> **description of the design if it does not regard verbal elaboration as necessary or**
> **helpful.**  In addition, in deciding whether to attempt a verbal description of the
> claimed design, the court should recognize the risks entailed in such a description,
> such as the risk of placing undue emphasis on particular features of the design and

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                      2

the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole.

*Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 679-680 (Fed. Cir. 2008) (e*n banc*) (emphasis added).

The "risks" of a verbal description are amply demonstrated by the verbose proposed construction offered by Defendants.  With respect to the D321 Patent, Defendants' proposed construction encompasses 289 words according to the Microsoft Word count to describe the D321 Patent.  Defendants' proposed verbal constructions refer to terms including: "cylindrical portion" (lower and upper), "recessions", "cutouts" (triangular or rounded), "trimmer line channel", "beveled edges", "line channel openings", "roughly diamond-shaped…channel", and many more.  *See* Jt. Cl. Constr. Chart, [Dkt. 124], pp. 2-5.  Such an approach clearly runs afoul of the admonition regarding the "risk" that a factfinder will focus on "each individual described feature in the verbal description rather than on the design as a whole."  *Id.*

District courts that have followed the admonition in *Egyptian Goddess* and declined to provide a detailed verbal construction such as those proposed here by Defendants.  For example, in *Fa-Hsing Lu v. Hyper Bicycles, Inc.*, the court considered the construction of two design patents covering the ornamental designs of bicycles.  *Fa-Hsing Lu v. Hyper Bicycles, Inc*., CA 20-11739-NMG, 2021 U.S. Dist. LEXIS 204906 (D. Mass. Oct. 25, 2021).  The defendant argued for a verbal construction, and the plaintiff contended the patent figures would suffice.  While recognizing that a verbal construction was within its discretion under *Egyptian Goddess*, the court relied on two earlier cases from the District of Massachusetts to decline the defendant's verbal construction beyond reference to the figures.  *Id.* at * 6 (*citing Reddy v. Lowe's Co.*, 60 F.Supp.3d 249 (D. Mass. 2014); and *DePaoli v. Daisy Mfg. Co., Inc.*, 2009 U.S. Dist. LEXIS 62057 (D. Mass. July 14, 2009)).  In following *Reddy* and *DePaoli*, the court held that reliance

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                              3

on the figures instead of a verbal description directed at each component of the bicycle design was more in line with Federal Circuit precedent because the use of a detailed verbal approach "invites the kind of myopic, restrictive approach to the infringement analysis which the Federal Circuit has found to be 'untethered from the ordinary observer inquiry' and therefore in error." *Fa-Hsing*. at *8 (*citing Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 796 F.3d 1312, 1335 (Fed. Cir. 2015)).

In *DePaoli*, in a fashion similar to the Defendants here, the defendant proposed a lengthy construction. *DePaoli* at *5-6. The court adopted the patent owner's proposed construction that merely referenced the figures, reasoning:

> Assuming, arguendo, that certain physical elements of the '840 design patent must be limited based on prosecution history and functionality, those limitations are entitled to no more special attention from the jury on the question of infringement than any other elements of the design. To provide the jury with a verbalized construction . . . which directs their attention to the two illustrations in the patent and then describes only those elements that are implicated by prosecution history and functionality would place undue emphasis on those few elements. This is precisely the danger against which the *Egyptian Goddess* court cautioned.

*Id*. at *11.

As in these cases, the same is true here. No verbal description of the D321 Patent at issue is necessary or appropriate, at least at this claim construction stage of the litigation.

### C.   THE D321 PATENT IS NOT INDEFINITE

Defendants allege that due to minor alleged discrepancies in certain figure drawings, the D321 Patent is indefinite. *See* Joint Claim Construction Chart [Dkt. 124]. Defendants have the burden to prove indefiniteness by clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc*., 319 F.3d 1357, 1366 (Fed. Cir. 2003)*; see also Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d1316, 1338 (Fed. Cir. 2008). As will be further discussed below, Defendants' allegations ofindefiniteness are based on at most minor discrepancies.

The minor discrepancies alleged by Defendants cannot provide a basis to invalidate the

D321 Patent for indefiniteness.  The Federal Circuit has set forth the test as follows:

> **[e]rrors and inconsistencies between drawings do not merit a § 112 rejection, however, if they "do not preclude the overall understanding of the drawing as a whole**." *Asano*, 201 U.S.P.Q. at 317; *see also Antonious v. Spalding & Evenflo Cos.*, 217 F.3d 849, 1999 WL 777450, at *8 (Fed. Cir. 1999) (unpublished) (reversing summary judgment of indefiniteness when alleged inconsistencies between drawings could have been based on perspective and were not "sufficient to preclude a person from gaining an overall understanding of the total substance of the designs"); *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, Case No. 2:15-cv-02812, 2016 WL 7017219, at *3-5 (C.D. Cal. Dec. 1, 2016) (holding that two patents covering a boot design met § 112's definiteness requirement, despite the fact that some figures showed a small "v-shaped notch" on the inward-facing side of the boot and other figures arguably did not).

*In Re:  Ron Maatita*, 900 F.3d 1369,1375-76 (2018)(emphasis added).  Furthermore, as the

Supreme Court has held in the context of a utility patent claim:  "absolute precision is

unattainable."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  For

inconsistencies to render a patent indefinite, they must be "material and of such a magnitude that

the overall appearance of the design is unclear." *Deckers Outdoor Corp. v. Romeo & Juliette,

Inc.*, 2016 WL 7017219, at *3 (C.D. Cal. Dec. 1, 2016); *see also Ex Parte Asano*, 201 USPQ

(BNA)(Nov. 27, 1978)("Mechanical drawing errors and inconsistencies between the figures of

the drawing, which do not preclude the overall understanding of the drawing as a whole are an

insufficient basis for holding the design both indefinite and insufficiently disclosed under 35

USC 112.").

Defendants allege in the Joint Claim Construction Statement (Dkt. 124):

> Defendants contend that the Court should find the D321 Patent indefinite and non-enabled under 35 U.S.C. § 112 based on inconsistencies between how the lower cylindrical portion of the spool design is depicted that are material to the overall visual impression, such as inconsistencies in the number and shape of cutouts. Compare D321 Patent at Figs. 1, 5, with *id*. at Figs. 4, 6.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                   5

Dkt. 124, p. 2 ("Jt. Cl. Constr. St."); *e.g.*, p. 3. Based on this statement, while Defendants have yet to fully explain their allegation, it appears that Defendants are complaining of the following differences in the perspectives of the figures showing the cut-outs as follows:



This is precisely the type of issue with varying "perspectives" that the Federal Circuit discounted in *In Re:  Ron Maatita*, because if the two cut-outs in Fig. 6 above at the 12:00 o'clock and 6:00 o'clock positions are rotated counterclockwise to the 9:00 o'clock and 3:00 o'clock positions, respectively, then looking from the perspective in Fig. 5 can obscure the view of those two slots because they are at the very edge of the right and left sides of the lower portion of the spool.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    6

Even if only four cut-outs are shown in Fig. 1 and Fig. 5, courts routinely decline to find invalidity of a design patent based on indefiniteness regarding such minor drawing discrepancies, including differences in shapes. In *Junker v. Medical Components, Inc.*, the district court considered a design patent describing a medical device regarding a handle for an introducer sheath. *Junker v. Medical Components, Inc.*, 13-4606, 2019 U.S. Dist. LEXIS 1530 (E.D. Penn. Jan. 4, 2009), *rev'd on other grounds*, 25 F.4th 1027, *17 (Fed. Cir. 2022)(finding invalidity due to on-sale bar). One of the discrepancies alleged by the defendant was that Figures 1 and 2 show five ribs, and Figures 3-6 and 8 showed six ribs. *Id.* at *19. An exemplary comparison of Figures 1 and 3 showed the issue as follows:



The district court held:

> Plaintiff responds that whether there are five or six ribs is not significant. What
> matters, Plaintiff argues, is the orientation of the ribs on the surface. Specifically,
> Plaintiff notes that the ribs are equally spaced, run parallel to each other and
> perpendicular to the length of the wings, and generally conform to the shape of
> the wings, getting shorter as the wing curves in towards the hub. I agree with
> Plaintiff that the precise number of ribs—five or six—does not significantly affect
> the overall visual impression of the design.

*Id*. at 19.  (Also, notably, with only five ribs to fill up the same space, those ribs are also thicker

than the version with six ribs.)  This exact same reasoning applies equally well to the issue of

four vs. six cut-outs allegedly illustrated in Fig. 1 and Fig. 5 versus Fig. 4 and Fig. 6 in the

instant case regarding the D321 Patent.  The overall visual impression of the spool is not significantly affected whether the number of cut-outs at the bottom portion of the spool is four or six, or whether the cut-outs are more u-shaped or slightly v-shaped.

Similarly, in *Crocs, Inc. v. Effervescent, Inc., et al.*, with regard to a design patent covering "Crocs" molded foam shoes, the district court considered alleged inconsistencies as to: "the size of the fur collar, whether some of the ornamental features should be included, the number of rows of ornamental dots, and the placement of the circular head of the mushroom pin."  *Crocs, Inc. v. Effervescent, Inc., et al.*, 2021 U.S. Dist. LEXIS 46353, *11 (D. Colo. 2021). The court reiterated that "[a]bsolute precision is unattainable" and that for inconsistencies to support finding the patent indefinite, they must be "material and of such magnitude that the overall appearance of the design is unclear." *Id*. at *9.  The court held that the defendant had "not shown, by clear and convincing evidence, that the seven figures that make up the '465 Patent are so 'insolubly ambiguous' as to be as to be indefinite under 35 U.S.C. § 112, or that the inconsistencies - if any - are any more than formidable or subject to reasonable disagreement between POSITAs." *Id*.

The Patent Trial and Appeal Board ("PTAB") at the USPTO has also had occasion to address alleged discrepancies between the photographs in a parent design patent application and the figures drawn for a child design patent.  In *Skechers v. Nike,* Skechers argued that the drawings in the child patent rendered the patent indefinite because the drawings showed two grooves when the photographs in the comparison indicated below only disclosed one groove:



*Skechers U.S.A., Inc. v. Nike, Inc.*, IPR2016-00871, p. 19 (PTAB Sept. 29, 2016) (Paper 8).  The

PTAB applied the following test based on Federal Circuit case law:

> The test for determining compliance with the written description requirement
> under 35 U.S.C. § 112, first paragraph, is whether the disclosure of the application
> as originally filed reasonably conveys to the artisan that the inventor had
> possession at that time of filing of the claimed subject matter. *Vas-Cath, Inc. v.
> Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). To be entitled to the '576
> application's effective filing date under 35 U.S.C. § 120, the '359 patent, as a
> continuation, must comply with the written description requirement. *In re Owens*,
> 710 F.3d 1362, 1366 (Fed. Cir. 2013). "The test for sufficiency of the written
> description, which is the same for either a design or a utility patent, has been
> expressed as 'whether the disclosure of the application relied upon **reasonably
> conveys to those skilled in the art that the inventor had possession of the
> claimed subject matter** as of the filing date.'" *Id.* (*quoting Ariad Pharms., Inc. v.
> Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).  As the Federal
> Circuit explained in *In re Daniels*, 44 F.3d 1452, 1456 (Fed. Cir. 1998) (citation
> omitted): "[i]n general, precedent establishes that although **the applicant 'does
> not have to describe exactly the subject matter claimed**, . . . the description

must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed.'"

*Id.* at p. 10 (emphasis added).  The PTAB further reasoned that it "**is not imperative**, for this element, or any others with which Skechers takes issue, **that the drawings in the continuation be exactly the same as the photographs of the parent**."  *Id.* at 21 (emphasis added).  The PTAB concluded that two grooves were not required by either the figures or the photographs and that the discrepancies were not sufficient to show that Nike was not in possession of the claimed invention as of the date of the parent design patent application:

> Our review of the drawings in Figure 6 reveals a single groove surrounding a piston where Skechers's alleged second, or inner, groove is more accurately the slightly tapering sidewalls of the piston itself. Ex. 1004, Fig. 6. We are also not persuaded that the minor inconsistency between the very slightly curved line of the top edge of the piston drawn in the '359 patent, and the straight top edge shown in the photograph, is sufficient to show that Nike did not have possession of the claimed invention.

*Id*. at 20.

In summary, based on the reasoning in *Junker*, *Crocs*, and *Skechers*, the minor discrepancies in the drawing figures in the D321 Patent related to the alleged four vs. six cut-outs in the lower portion of the spool and potential differences in the cut-outs as being u-shaped versus slightly v-shaped, do not render the claim indefinite.  Torvent reserves additional argument and/or evidence for rebuttal once Defendants have completely explained their bases for their assertion of indefiniteness.

### D.    ENABLEMENT CANNOT PROPERLY BE CONSIDERED IN THE CONTEXT OF CLAIM CONSTRUCTION

TTi in the Joint Claim Construction Chart [Dkt. 124] also alleges that the Claim of D321 is "non-enabled."  The Federal Circuit has described indefiniteness as "inextricably intertwined" with claim construction.  *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F. 3d 1374, 1379 (Fed.

Cir. 1999).  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Communs., LLC v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998).

In contrast, "the Federal Circuit has held validity arguments, such as lack of enablement and lack of written description, are not proper to address during claim construction." *Haddad v. United States*, 164 Fed. Cl. 28, 67 - 68 (Fed. Cl. 2023) (*citing Phillips v. AWH Corp*. 415 F.3d 1303, 1327 (Fed. Cir. 2005) (stating the "we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction"); *see also Schering Corp. v. Amgen, Inc*., 18 F. Supp. 2d 372, n. 13 (D. Del. 1998); *UCB, Inc. v. KV Pharm. Co*., 2009 U.S. Dist. 72764, *30 (D. Del. Aug. 18, 2009) (J. Farnan) (in the context of claim construction order, holding that utility and enablement could not be decided at "this early stage").  Enablement, although a question of law based on underlying facts, where there are factual determinations to be made, it is amenable to resolution by jury. *B.J. Servs. Co. v. Halliburton Energy Servs.*, 338 F. 3d 1368, 1371 (Fed. Cir. 2003).  Therefore, this Court should reject Defendants' attempt to interject the defense of enablement into this claim construction proceeding.

## II.  <u>DEFENDANTS' RESPONSIVE BRIEF REGARDING THE D321 PATENT</u>

### A.  <u>INTRODUCTION</u>

Before the Court is supplemental claim construction relating to the D321 Patent.  As discussed below, the primary issue to be resolved is whether the D321 Patent is indefinite and/or non-enabled under 35 U.S.C. § 112.  In particular, the D321 Patent depicts conflicting, irreconcilable ornamentation about the spool's lower cylindrical portion and trimmer line channel openings.  These inconsistent depictions do not merely reflect changes in viewing perspective. Instead, the figures plainly and unambiguously illustrate irreconcilable differences in the number,

shape, and positions of cutouts and recessions formed along the spool's lower cylindrical portion, as well as the trimmer line guide channel openings.  As confirmed by the testimony of Mr. Paul Hatch, Defendants' design patent expert having over 25 years of product and industrial design experience, these inconsistencies render the D321 Patent invalid.  *See generally* Hatch Decl. (APPX_000000025).  If the Court finds the D321 Patent invalid, it need not verbally construe the D321 Patent.

If the Court does not find the D321 Patent invalid, however, it is necessary to verbally construe the D321 Patent.  Defendants have therefore proposed a verbal construction for the D321 Patent in a similar manner as done previously for the D893 Patent, except that Defendants' proposal contains brackets where the aforementioned inconsistencies will need to be addressed. The D321 Patent—like the D893 Patent previously considered by the Court—"contains both functional and nonfunctional elements" such that "the scope of the claim ***must*** be construed in order to identify the nonfunctional aspects of the design as shown in the patent."[1] *Sport Dimension, Inc. v. Coleman Co.,* 820 F.3d 1316, 1320 (Fed. Cir. 2016) (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).  Indeed, as the Court previously determined, it eventually "will be required to provide a verbal construction of the D893 patent."  *See* D.I. 118 at 41 (inviting the parties to "re-raise the issue at a later time should it become necessary").

Defendants respectfully submit that now is the appropriate time to construe both the D321 and D893 Patents.  As detailed below, the scope of both design patents is central not only to non-infringement issues, but also to multiple of Defendants' invalidity theories that are ripe for resolution.  If anything, Torvent's now-parallel assertion of two design patents against the same accused spool exacerbates the need for clarification as to how, if at all, their claimed scope differs.

---

[1] Emphasis is added throughout Defendants' briefing unless noted otherwise.

**B.** **THE D321 PATENT IS INDEFINITE AND NON-ENABLED UNDER 35 U.S.C. § 112**

"Patent invalidity based on nonenablement and indefiniteness is a question of law," and must be proven by clear and convincing evidence. *Masonite Corp. v. Craftmaster Mfg., Inc.*, No. 9-cv-2131, 2011 WL 13327344, at *3 (N.D. Ill. Apr. 28, 2011). Requiring definiteness "ensure[s] that the disclosure is clear enough to give potential competitors (who are skilled in the art) notice of what design is claimed—and therefore what would infringe." *In re Maatita*, 900 F.3d 1369, 1376 (Fed. Cir. 2018). As such, "a design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure." *Id.* at 1377.

"Because design patent claims are limited to what is shown in the application drawings, there is often little difference in the design patent context between the concepts of definiteness (whether the scope of the claim is clear with reasonable certainty) and enablement (whether the specification sufficiently describes the design to enable an average designer to make the design)." *Id.* At 1375; *see also Masonite Corp.*, 2011 WL 13327344, at *3 (providing similar explanation).

"A visual disclosure may be inadequate—and its associated claim indefinite—if it includes multiple, internally inconsistent drawings." *In re Maatita*, 900 F.3d at 1375 (citing *Times Three Clothier, LLC v. Spanx, Inc.*, Case Nos. 13-cv-2157, 13-cv-7260, 2014 WL 1688130, at *7–9 (S.D.N.Y. 2014)). "Because in a design patent, 'the drawings or photograph constitute[ ] the entire visual disclosure of the claims[,] it is of utmost importance that the drawing or photo be clear and complete, and that *nothing* regarding the design sought to be patented is left to conjecture.'" *Seed Lighting Design Co. v. Home Depot*, No. 04-cv-2291 SBA, 2005 WL 1868152, at *8 (N.D. Cal. Aug. 3, 2005) (emphasis theirs) (quoting Manual of Patent Examining Procedure § 1503.2).

**1.** **THE D321 PATENT'S FIGURES SHOW IRRECONCILABLE INCONSISTENCIES**

Here, the D321 Patent's figures unequivocally show fundamentally different ornamentation for the lower cylindrical portion that renders the claimed spool design unclear to a person skilled in the art ("POSA"). This stems from multiple inconsistencies.

*First,* as shown by the red boxes below, Figure 1 of the D321 Patent unambiguously depicts **four (4) cutouts** provided along the tapered bottom portion of the spool, but Figure 6 instead depicts **six (6) cutouts**. Hatch Decl. ¶ 41, tbl. 4, (APPX_00000047). Notably, the **entire** circumference of the lower cylindrical portion [Yellow] is visible in both Figures 1 and 6. Yet, Figures 1 and 6 clearly show a different number of cutouts along that circumference:

| D321 Patent, Fig. 1 | D321 Patent, Fig. 6 |
| --- | --- |
|  | |

As shown above, the cutouts are placed with **unequal, asymmetrical spacing** in Figure 1, whereas Figure 6 depicts the cutouts at **equal distances** along the circumference.

Torvent does not address the irreconcilable differences between Figures 1 and 6, both of which show the entire bottom circumference of the lower cylindrical portion. *See supra* Torvent Op. Br. at 5-6. Instead, it tries to explain away the contradictory number of cutouts as an "issue with varying 'perspectives'" between Figures 4 and 5. *Id.* But Torvent does not—and cannot—

explain away the fact that the only two figures showing the ***entire*** bottom profile of the lower cylindrical portion (Figures 1 and 6) plainly depict different numbers of cutouts. *See* Hatch Decl. ¶ 43, APPX_00000048 (explaining how Figures 1 and 6 provide the best views and definitively show the contradiction).[2]

*Second*, the D321 Patent's figures are also contradictory as to the cutouts' shaping. In particular, Figure 1 shows ***triangular cut-outs*** extending uniformly to the lower cylindrical portion's edge, whereas Figures 4 and 5 show a "***mouse-door" shape*** having a curved top and that angles outward as it extends to the lower cylindrical portion's edge. *Id.* ¶¶ 41, tbl. 4(APPX_00000047).

| D321 Patent, Fig. 1 (Close-Up) | D321 Patent, Fig. 4 (Close-Up) |
|---|---|
|  | |

*Fourth*, the D321 Patent's figures are contradictory as to size and width of the recession

---

[2] In any event, Torvent's purported explanation for Figures 4 and 5 is wrong. As Mr. Hatch explains, although these side-profile views are less than definitive, that Figure 5 shows only two cutouts on the visible half of the lower cylindrical portion at least suggests that, like Figure 1, there are only four cutouts. *Id.* ¶ 44 (APPX_00000049). Likewise, Figure 4 showing three cutouts on the visible half of the lower cylindrical portion at least suggests, like Figure 6, six cutouts in total. *Id.* (noting how one would interpret Figures 4 and 5 in light of Figures 1 and 6). Regardless, Figure 1 is plainly inconsistent with even Torvent's interpretation of Figures 4 and 5.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    16

about the lower cylindrical portion.  In Figure 1, the recession spans only about ***one-sixth (1/6)*** of the total distance between the two neighboring cutouts (as illustrated by the red backet below left).  But, when depicted in Figures 4 and 6, the same recession spans about ***one-third (1/3)*** of that distance (as illustrated by the blue and red brackets below right).  Hatch Decl. ¶¶ 49-50, tbl. 5 (APPX_00000050).

| D321 Patent, Fig. 1 | D321 Patent, Fig. 6 |
|:---:|:---:|
|  | |

*Fifth*, the D321 Patent's figures are contradictory as to the shape of the trimmer line channel openings.  In Figure 1, the trimmer line channel opening has a hook-like structure (*see* red arrow) extending from the left side into the center of the opening.  Hatch Decl. ¶¶ 56-58, tbl. 6 (APPX_00000052).



| D321 Patent, Fig. 1 | D321 Patent, Fig. 2 | D321 Patent, Fig. 4 |
| --- | --- | --- |

However, Figure 2 shows the trimmer line channel opening without this structure, and with different contour lines for its shape. *Id.* Figure 4 likewise lacks this structure, and shows further differences in contouring lines that provide differently-shaped surfaces within and around the trimmer line channel opening. *Id.*

Given these issues, Torvent cannot credibly dispute that the D321 Patent's figures unambiguously depict the features of the lower cylindrical portion and trimmer line channel openings inconsistently, including differences in number of features, size, shape, and position.

### 2.   THE D321 PATENT'S INCONSISTENCIES RENDER IT INVALID

As Defendants' expert, Mr. Paul Hatch, explains, the D321 Patent's inconsistences are material to the ordinary observer and leave a POSA (1) unable to discern the scope of the claimed ornamental design with reasonable certainty; and (2) unable to make and use the claimed ornamental design.  Hatch Decl. ¶¶ 38-39 (APPX_00000045-46), 46-47 (APPX_00000049), 53-54 (APPX_00000052), 60-61 (APPX_00000054), 64-65 (APPX_00000055-56).

As Mr. Hatch explains, these inconsistencies would be immediately noticeable to the ordinary observer.  "Because the main shapes of the spool and the lower cylindrical portion themselves are a common appearance among the prior art . . . the eye of the ordinary observer is immediately drawn to [the] perceived differences from those known shapes" resulting from each

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    18

inconsistency.  *Id.* ¶¶ 44 (APPX_00000049), 51 (APPX_00000051), 59 (APPX_00000054); *see also id.* ¶¶ 25-27 (APPX_00000035-38) (explaining how the ordinary observer "would bring a perceptive eye" here).  And for the cutouts and recessions, it is also "significant" that they "provide interruptions along a design element with otherwise smooth, rounded contours" is also "significant," because "[t]he ordinary observer's eye would immediately be drawn to the locations where the smooth impression of the cylindrical shape is disrupted."  *Id.* ¶¶ 44 (APPX_00000049), 51 (APPX_00000051).

Importantly, the alternatives implicated by these inconsistencies "provide the ordinary observer quite different visual impressions."  Hatch Decl. ¶¶ 45 (APPX_00000049), 52 (APPX_00000051), 60 (APPX_00000054).  The "four, triangular cutouts placed closely to the vertical recession" and the "thin recession" imposes a "starker disruption" to the lower cylindrical portion, which "impart[s] a *jagged* overall visual impression."  *Id.* at 45 (APPX_00000049), 52 (APPX_00000051).  Having a hook-structure in the trimmer line channel likewise "impart[s] a more *jagged* impression."  *Id.* ¶ 59 (APPX_00000054).  By contrast, the "the symmetrical distribution of six cutouts, along with their rounded, mouse-hole shape" and a "wider recession" "provides a much smoother, *rounded* overall visual impression."  *Id.*  Mr. Hatch also highlights how, "[b]ased on the many inconsistencies . . . there remains very few features from which to create an impression":



**Table 7: Almost all of the distinguishing visual features are inconsistent between the figures.**

Colored cropped Figure 1,

Red color indicates areas that are inconsistent between figures, thereby

disrupting the overall impression of the object as a whole

Hatch Decl. ¶ 62, tbl. 7 (APPX_00000054-55).

Torvent argues—without any supporting testimony from a person of skill in the art—that "[t]he overall visual impression of the spool is not significantly affected" by "the number of cut-outs" or their shape. *Supra* Torvent Op. Br. at 8-9. This conclusory attorney argument is both factually incorrect (as explained above) and legally incorrect. The Federal Circuit's predecessor held that "there are no portions of a[n ornamental] design which are 'immaterial' or 'not important.'" *In re Blum*, 374 F.2d 904, 907 (C.C.P.A. 1967). "A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design."

*Id.*

Torvent also fails to recognize that, because the lower cylindrical portion and trimmer line channel openings are partially functional, treating these inconsistencies as immaterial would violate Federal Circuit law by eliminating ornamental aspects of functional features from the claimed design. *Sport Dimension*, 820 F.3d at 1322 (reversing construction that "eliminated the [functional] armbands and side torso tapering from the claim entirely"). Torvent cannot reasonably contest that the mere existence of the trimmer line channel openings, cutouts, and recessions are functional. *See infra* Section II.D. Given that functionality, the protectable ***ornamental*** aspects of the lower cylindrical portion necessarily stem from the particular sizes, shapes, positions, and orientations chosen for these features. *See, e.g.*, *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342-44 (Fed. Cir. 2020) (crediting district court for "meticulously acknowledg[ing]the ornamental aspects of each functional element" in construing the design's scope). Thus, it cannot be the case that inconsistencies among such features (*e.g.*, their number, placement, size, and shaping) are immaterial to the D321 Patent's overall ornamental design. To conclude so would, in effect, equate to finding that they impart no ornamental value.

This case is on all-fours with *Times Three Clothier* and *Masonite Corp.*, in which the design patents at issue were held indefinite. As in *Times Three Clothier*, the inconsistently-depicted features form "a fundamental part of the claimed design," and there is no "intrinsic or extrinsic evidence that would indicate which of the two versions of the [ornamental features] the patentee meant to claim." 2014 WL 1688130, at *7 (finding indefiniteness based on inconsistent angulation of a single ornamental line shown across the drawings). And, as in *Masonite Corp.*, there are multiple inconsistencies at work here that (both individually and collectively) force a POSA to "resort to conjecture" in determining the scope of the claimed design. 2011 WL 13327344, at *5

(N.D. Ill. Apr. 28, 2011) (finding indefiniteness based on uncertainty regarding whether "the decorative trim surrounding the upper rectangular panel of the door facing is supposed to contain four contour lines . . . or some other number" and whether "the decorative trim surrounding the lower rectangular panel is supposed to contain six lines or five").  Put simply, "a simple visual inspection of the figures both reveals the inconsistencies in the drawings and resolves the question of whether the inconsistencies render the patents indefinite."  *Id.* at *5 (quotation omitted and cleaned up).

Torvent's cited authority is inapposite.  In *Junker*, the court agreed with plaintiff that "whether there are five or six ribs is not significant," but did so only because the ribs were otherwise depicted consistently.  *Junker v. Med. Components, Inc.*, No. 13-cv-4606, 2019 WL 109385, at *8 (E.D. Pa. Jan. 4, 2019) ("[T]he ribs are equally spaced, run parallel to each other and perpendicular to the length of the wings, and generally conform to the shape of the wings, getting shorter as the wing curves in towards the hub.").  And in *Crocs*, there reasonable disputes remained over the existence of inconsistencies.  *See Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 952231, at *3 (D. Colo. Mar. 11, 2021).  Neither is the case here. The inconsistencies here are plainly apparent from the figures, and are not limited to the number of cutouts.  Rather, the inconsistencies further include the cutouts' shape, relative placement, and symmetry, as well as the trimmer line channel openings' and recessions' sizing and shape. Moreover, neither *Junker* nor *Crocs* faced the issue present here, where finding the inconsistencies immaterial would effectively eliminate the ornamental aspects of partially functional features from the claimed design.  *See Junker*, 2019 WL 109385 at *8; *Crocs*, WL 952231 at *3-4.[3]

---

[3] *In re Maatita* and *Skechers* fare no better.  By its own description, *In re Maatita* was "not dealing with inconsistencies in the drawings, . . . but rather with a single representation of a design that is

At bottom, the D321 Patent depicts numerous inconsistencies that are material to the overall visual impression. A POSA would need to resort to impermissible conjecture to determine the scope of the claimed design or make and use it. Hatch Decl. ¶¶ 44-60 (APPX_00000049-54). The D321 Patent is therefore invalid as indefinite and non-enabled under 35 U.S.C. § 112.

## C.   THE D321 PATENT AND D893 PATENT SHOULD BE CONSTRUED NOW

In its Claim Construction Order, the Court noted that eventually it "will be required to provide a verbal construction of the D893 patent," but that doing so was, at that time, "premature." *See* D.I. 118 at 41 (inviting the parties to "re-raise the issue at a later time should it become necessary"). And although Torvent urged the Court to defer construction, even it conceded that construction would be appropriate once the parties identified "the components that perhaps will matter more" to "the key issues [] on infringement and validity." D.I. 111, Hr'g Tr. at 97:5-20. Defendants respectfully submit that the parties have sufficient clarity now to understand that the *entirety* of the claimed designs are at issue. Torvent's new assertion of the D321 Patent also presents new issues that merit construction of both the D893 and D321 Patents now.

*First*, Defendants intend to present non-infringement positions based on differences between the accused product and claimed designs found in each of the (1) upper cylindrical portion; (2) guide channels / guide channel openings; and (3) lower cylindrical portion. Thus, a verbal construction addressing these features is necessary for Defendants to fully present their non-infringement defense.

*Second*, construction of the claimed designs directly impacts Defendants' prior art invalidity theories under 35 U.S.C. §§ 102-103. Defendants' current invalidity contentions, for

---

alleged to be of uncertain scope." 900 F.3d at 1375-76. And *Skechers* relates to the "written description" requirement of 35 U.S.C. § 112—a different requirement than the indefiniteness and enablement challenges at issue here.

example, assert that neither the D321 Patent nor the D893 Patent are entitled to the priority benefit of an earlier-filed utility patent application because the patents' drawings contain new subject matter that had not been previously disclosed. *See* Ex. D at 3-6 (APPX_00000086-89). Indeed, the U.S. Patent Office has ***already*** determined that Torvent's D893 Patent is ***not*** entitled to earlier priority.[4] Defendants assert that the same rationale applies to the D321 Patent. If Defendants are correct, then both the D321 and D893 Patents are invalid as anticipated by Torvian's own Cobramax (LX-502) product,[5] and even the accused products would be prior art to the D321 Patent. Ex. D at 22-23 (APPX_00000093-94). Defendants further assert a series of other prior art references that render the D893 and D321 Patents obvious. *Id.* at 20-22 (APPX_00000091-93). Construing the D893 and D321 now may therefore confirm their invalidity and streamline the issues in this case.

*Third*, construction of the claimed designs also impacts Defendants' non-prior art-based invalidity theories. Beyond indefiniteness and enablement, Defendants assert that the D321 Patent is invalid for statutory and obviousness-type double patenting over the D893 Patent—*i.e.*, that Torvent has impermissibly extended the 14-year patent term of the D893 Patent by obtaining the later-expiring D321 Patent on a patentably indistinct design. *See* Ex. D at 32 (APPX_00000095)

---

[4] *See* Ex. E at 2, Part(A) Resp. for Certificates of Correction (Aug. 19, 2021) ("The disclosure in the design application (29/557,558, now D814,893) ***includes subject matter not shown*** in the prior utility application (14/548,392, now pat. No. 9,516,807)."); *id.* at 3-12, Decision on Petition (Dec. 13, 2022) (denying Torvent's renewed petition to list the D893 Patent as a continuation of the '807 Patent).

[5] As early as April 2022, Defendants informed Torvent that the D893 Patent was invalid based upon an offer-for-sale of the Cobramax (LX-502) product—a product that Torvent contends embodies both asserted design patents—more than one year before the earliest possible priority date, and requested that Torvent dismiss its infringement claim. Torvent nevertheless has continued to assert the D893 Patent, and now D321 Patents, even ***after*** the Patent Office explicitly denied Torvent's attempted priority claim and revoked a mistakenly-granted certificate of correction.

(noting that Torvent contends that **both** claimed designs cover the accused products and Torvian's Cobramax (LX-502) product).  This invalidity theory not only implicates the scope of each design patent, it implicates the scope of the D321 and D893 Patents **relative to each other**.  *See, e.g.*, *Eli Lilly & Co. v. Barr Labs., Inc*., 251 F.3d 955, 968 (Fed. Cir. 2001) ("A later patent claim is not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim.").

Thus, at this stage of the case, there exists a demonstrable need to construe the entirety of both the D321 and D893 Patents, as clarity regarding their scope likely will permit early resolution of Torvent's claims.  Deferring the parties' construction disputes until summary judgment and/or trial would only lead to the unnecessary expenditure of resources, such as by requiring the parties and their experts to perform multiple, hypothetical analyses throughout fact and expert discovery for each construction the Court might ultimately adopt.  Moreover, throughout the claim construction process, Torvent has failed to provide to meaningful clarity regarding what aspects of the design patents it contends are ornamental versus functional.[6]  Delaying construction risks that Torvent will be permitted to lie in wait—having never disclosed its full contentions—only to spring them on Defendants for the first time after fact discovery closes.  Defendants therefore respectfully request that Court construe the D321 and D893 Patents at this time.

###### D. IF NOT INDEFINITE, THE D321 PATENT SHOULD BE VERBALLY CONSTRUED

###### 1. THE D321 PATENT DEPICTS MULTIPLE FUNCTIONAL FEATURES

---

[6] As previously noted, Torvent declined to identify any aspects of Defendants' ornamentality and functionality contentions it deemed inaccurate, and has declined to respond to Defendants' inquiries and interrogatory regarding functionality other than vaguely stating that "none of the aspects of the claimed designs of the Asserted Design Patents are 'purely functional.'"  *See* D.I. 118 at n. 14; D.I. 110-12, (Torvent's Resp. to Interrog. No. 13 (May 13, 2022)

The D321 Patent's drawings depict a spool comprising multiple functional features. *See* D.I. 66 at 15-16. Admissions in the inventor's, Mr. George Alliss's, prior '807 Patent,[7] along with Mr. Collins's expert testimony, demonstrate how each feature is functional. As such, if the Court does not find the D321 Patent invalid, it needs to be verbally construed. Defendants maintain that the irreconcilable differences identified above cannot be resolved and therefore take no position on those inconsistencies. Defendants' construction leaves those inconsistencies in brackets.

The ***upper cylindrical portion*** [Yellow] that ends with ***protrusions*** and has ***an upper flange*** extending radially outward carries out multiple functions. As the '807 Patent explains, upper protrusions "perform[]" an "line control indexing feature" in which "[t]he core 16 may rotate in the free spin mode at most until the protrusions hit one of the stop bars halting the rotation of the core." D.I. 1-2, '807 Patent at 7:42-49; *see also id.* at 7:58-63, 10:18-49 (discussing how "free spin will be controlled by the teeth 52 and stop bars"). 8:58-63 ("Ramps, stops and cogs are each preferably provided to allow the spool to wind spool in a particular direction and to index the amount of line dispensed can be controlled."); Collins Decl., ¶ 28 (APPX_00000018). The upper cylindrical portion provides a seat for a "module." *Id.* at 8:63-9:1 ("[A] module 2470 [] can be installed within the spool 2416."); *see also id.* at 9:21-22, Fig. 27; Collins Decl., ¶ 29 (APPX_00000018). And the upper flange "act[s] to maintain the line on the spool." D.I. 1-2, '807 Patent at 11:57-58; *see also id.* at 6:58-7:1, 9:31-34, 9:56-64, 13:59-63 (discussing how flanges bound compartments and maintain trimmer line); Collins Decl., ¶ 26 (APPX_00000017).

---

[7] Mr. Alliss is named inventor to both the '807 and D321 Patents, a managing member of Torvent, and 50% owner of Torvent. *See* D.I. 90 ¶¶ 37, 39. As such, the Court should deem his statements from the '807 Patent regarding functionality party admissions. Additionally, Torvent conceded its relevance by having previously taken the position that the D321 Patent is entitled to the priority benefit of the '807 Patent. *See* Sikora Decl. ¶ 2 (APPX_00000074). To be clear, Defendants disagree that the D321 Patent is entitled to the priority benefit of the '807 Patent's filing date. *See, e.g.*, Ex. D at 2-7 (APPX_00000085-90).

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**       26

The ***trimmer line channels*** that end with ***trimmer line channel openings*** [Red] likewise perform functions.  Channels "allow[] a length of trimmer line 14 to feed through . . . through the core and out the other side."  D.I. 1-2, '807 Patent at 6:1-19; *see also id.* at 5:27-40, 9:65-10:6 (discussing same); Collins Decl., ¶ 25 (APPX_00000017).  And the channel openings "cause the line to all flow into one chamber."  D.I. 1-2, '807 Patent at 12:48-59; *see also id.* at 9:65-10:6, 11:8-15, 11:44-50, 12:3-15 ("varied orientation" of openings can "bias[] trimmer line into a chamber"); Collins Decl., ¶ 24 (APPX_00000016-17).

The ***lower cylindrical portion*** [Blue] extending down from ***a lower flange*** that has ***cut-outs and recessions*** along its bottom edge is also functional.  The lower flange "act[s] to maintain the line on the spool."  D.I. 1-2, '807 Patent at 11:57-58; Collins Decl., ¶ 26 (APPX_00000017).  And the lower cylindrical portion (or "lower tubular portion") "extend[s] into [a] knob to further secure the core to the knob and to promote rotation of the core."  D.I. 1-2, '807 Patent at 12:1-29; Collins Decl., ¶¶ 30-31 (APPX_00000019).  The cutouts and recessions (*i.e.*, structures akin to "spline 2434") along the lower cylindrical portion secure the "spool" to a "knob 2430 through . . . cooperating slots and grooves on the knob 2430 so that the spool and knob will co-rotate together." D.I. 1-2, '807 Patent at 8:55-58; *see also id.* at 5:46-57 (discussing "non-circular arms/splines 34 . . . to securely rotate the knob and core together"), 10:18-24, 13:47-58; Collins Decl., ¶¶ 30-31 (APPX_00000019).  Users may thereby co-rotate the spool and knob "relative to the housing" to "wrap [trimmer line] around the core."  D.I. 1-2, '807 Patent at 9:65-10:3; *see also id.* at 10:57-11:5, 12:1-29.

### 2.   DEFENDANTS' PROPOSED VERBAL CONSTRUCTION SHOULD BE ADOPTED

Because the D321 Patent depicts partially functional features, Federal Circuit law requires the Court to construe it.  Even after *Egyptian Goddess*, the Federal Circuit has repeatedly "made

clear that '[w]here a design contains both functional and non-functional elements, the scope of the claim ***must be construed*** in order to identify the non-functional aspects of the design as shown in the patent.'"  *Lanard Toys*, 958 F.3d at 1342 (citing *Sport Dimension* and *OddzOn*); *see also Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) ("[W]e are not persuaded by Richardson's argument that our holding in Egyptian Goddess mandates a different result here."); *Sport Dimension*, 820 F.3d at 1320 ("[T]he scope of a design patent claim ***must be limited to the ornamental aspects*** of the design.") (quotation omitted).  District courts thus routinely adopt verbal claim constructions identifying the ornamental aspects of such functional features to prevent the jury from applying overbroad interpretations based on the drawings alone.  *See Universal Trim Supply Co. Ltd. v. K & K Grp. Ltd*., 2010 WL 5094244, at *2 (D. Utah 2010); *Torspo Hockey Intern. Inc., v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 874-75 (D. Minn. 2007).

Although Federal Circuit law grants the Court discretion regarding "the level of detail" to be used to clarify ornamentality, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (identifying "the level of detail to be used in describing the claimed design" or "verbal characterization" as discretionary), its guidance also makes clear that the circumstances here— where "the drawings contain functional features"—merit "an extensive verbal claim construction." *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 215-16 (Fed. Cir. Jan. 16, 2004).

The D321 Patent—like the D893 Patent—includes numerous functional features: (1) the upper protrusions' function in the indexing feature; (2) the upper cylinder's function to provide a seat for a module; (3) the upper flange's function to hold trimmer line on the spool; (4) the trimmer line channel's function in routing trimmer line; (5) the trimmer line channel openings' function in directing trimmer line into the chamber; (6) the lower flange's function to hold trimmer line on the spool; (7) the cutouts' function in securing the spool to a bump-knob; and (8) the recessions'

function in securing the spool to a bump-knob.  *See supra* Section II.D.1.  Construction is required for ***each*** of these features to acknowledge their ornamental aspects.  *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334 (Fed. Cir. 2015) (instructing to construe "the particular ornamental designs of those underlying [functional] elements").

That doing so, as a practical matter, happens to require additional description is not a principled basis upon which to reject Defendants' proposed verbal constructions.  The Federal Circuit made clear in *Richardson* that "[a] claim to a design containing ***numerous*** functional elements, . . . ***necessarily mandates a narrow construction***."  597 F.3d at 1294-95.  And it has likewise confirmed that courts can "meticulously describe[] each of the drawings." *Arminak v. Saint-Gobain Calmar*, 501 F.3d 1314, 1319-21 (Fed. Cir. 2007); *see also Egyptian Goddess*, 543 F.3d at 679-80 (affirming a "detailed verbal description of the claimed design").

Torvent is simply incorrect in attempting to portray Defendants' proposal as outlandishly verbose.  Torvent, for example, tries to critique Defendants' construction for "refer[ring] to terms" ("cylindrical portion," "recessions," etc.), *see supra* Torvent Op. Br. at 3, but fails to realize that the Federal Circuit endorsed ***exactly that*** as "following [its] claim construction directives to a tee" in *Larnard Toys*.  958 F.3d at 1342 (crediting court for "meticulously acknowledg[ing] the ornamental aspects of each functional element, including 'the columnar shape of the eraser, the specific grooved appearance of the ferrule, the smooth surface and straight taper of the conical piece, and the specific proportional size of these elements in relation to each other'").  Torvent also tries to get shock value out of citing the roughly 289 and 308 word-counts for Defendants' proposed constructions.  *See supra* Torvent Op. Br. at 3; D.I. 111, Hr'g Tr. at 93:1-11 (counsel suggesting (incorrectly) that a 308-word count "is the most by far").  But it neglects to mention that the Federal Circuit's *Minka* holding affirmed a construction spanning roughly ***421 words***.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                    29

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. CIV.A. 3:00-CV-0888G, 2002 WL 1331883, at *3 (N.D. Tex. June 14, 2002), *aff'd*, 93 F. App'x 214 (Fed. Cir. 2004).

That Torvent continues to oppose ***all*** descriptive construction, but still "fails to explain how a court could effectively construe design claims, where necessary, in a way other than by describing the features shown in the drawings" is telling and highlights the impropriety of its approach. *Richardson*, 597 F.3d at 1294.  Just as the plaintiff in *Richardson*, Torvent advances "an argument for a[n improper] claim scope that includes the utilitarian elements" under the guise of arguing that the Court will "err[] in separating out functional aspects of [its] design." *Id.*

Defendants' proposed construction ensures the factfinder evaluates the figures "as shown," (*see* D.I. 66 at 15-16), but still provides "sufficient detail" to identify the ornamental aspects for each functional feature.  *See High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1314 (Fed. Cir. 2013) (vacating construction for "represent[ing] too high a level of abstraction" and ordering the court to "add sufficient detail to its verbal description").  And consistent with *Lanard Toys*, Defendants' proposed construction identifies relevant ornamental features shown (*e.g.*, the shape of the trimmer line channel opening or beveled and tapered lower cylindrical portion) "as they relate to the prior art."  958 F.3d at 1342-44.

The prior art discloses upper portions with upper flanges and protrusions of varying sizes, shapes, positions, and/or orientations.  *See* Sikora Decl., Appx. 1 at 1-3 (APPX_00000076-78) (showing relevant prior art).  Kullberg and Everts '523, for example, show examples of highly similar protrusions provided about an upper cylindrical central portion disposed proximate an upper flange:

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                    30



**D321 Patent, Fig. 4**     **Kullberg, Fig. 9**     **Everts '523, Fig. 3 (excerpt)**

*Id.* at 1.  As such, the protectable ornamental aspects of the upper cylindrical portion stem from the combinations of particular sizes, shapes, positions, and orientations of the upper cylindrical portion's various features in relation to one another.

The prior art also discloses trimmer line channels and channel openings of varying sizes, shapes, positions, and/or orientations, including many that resemble those of the D893 Patent.  *See* Sikora Decl., Appx. 1 at 3-6 (APPX_00000078-81).  Proulx '917 and Alliss '237, for example, show roughly diamond-shaped trimmer lines channels used in the prior art to feed trimmer line downward and left:



**D321 Patent, Fig. 4**     **Proulx '917 at Fig. 14C.**     **Alliss '237 at Fig. 4.**

The protectable ornamental aspects of the D893 Patent's trimmer line channels and channel openings thus stem from their precise size, and shape.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                              31

The prior art likewise discloses various lower spool portions (and related structures for connecting the spool to bump-head), including cut-outs and recessions of differing sizes, shapes, positions, and/or orientations. *See* Sikora Decl., Appx. 1 at 6-7 (APPX_00000081-82).  Skinner '436 and Everts '523 are particularly informative, as both show cutouts along a lower cylindrical portion (red arrows), and Skinner '436 additionally has a recession (blue arrow):



| D321 Patent, Fig. 1 | Skinner '436 at Fig. 10. | Everts '523 at Fig. 5. |

As such, any protectable ornamental aspects of the lower cylindrical portion stem from the particular sizes, shapes, positions, and orientations of the lower cylindrical portion's various features, *e.g.*, its beveled edging, and the number of particularly-shaped cutouts.

Defendants' proposed construction carefully specifies the ornamental aspects of the D321 Patent's functional features, and should therefore be adopted if the D321 Patent is not indefinite.[8]

## III.    TORVENT'S REPLY POSITION

### A.    SUMMARY

Defendants seek to invalidate the 'D321 Patent based on four alleged minor alleged inconsistencies between the various drawings.  However, as will be shown herein, Defendants

---

[8] Because a POSA cannot discern the scope of the claimed design with reasonable certainty due to contradictory depictions of the lower cylindrical portion, Defendants' proposed construction does not take a position regarding resolution of those inconsistencies.  Instead, it sets forth potential alternatives for the Court to consider adopting in the event it considers the inconsistencies reconcilable.

have failed to show by "clear and convincing" evidence that the 'D321 Patent is indefinite or not enabled.

It is well settled that: "[e]rrors and inconsistencies between drawings do not merit a § 112 rejection, however, if they 'do not preclude the overall understanding of the drawing as a whole.' *Ex Parte Asano*, 1978 Pat. App. LEXIS 3, *6, 201 U.S.P.Q. 315, 317 (BPAI 1978)(reversing indefiniteness finding by examiner as to design patent application on a toy vehicle, and holding that all 19 alleged drawing discrepancies were "sufficiently insignificant to the total disclosure of the application design" and did not provide a basis for rejection under 35 USC 112, first or second paragraph); *see also Antonious v. Spalding & Evenflo Cos*., 217 F.3d 849, 1999 WL 777450, at *8 (Fed. Cir. 1999)." *In re Ron Maatita*, 900 F.3d 1369,1375-76 (2018). "[A]bsolute precision is unattainable." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 910 (2014). For inconsistencies to render a patent indefinite, they must be "material and of such a magnitude that the overall appearance of the design is unclear." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc*., 2016 WL 7017219, at *3 (C.D. Cal. Dec. 1, 2016); *see also Ex Parte Asano*, 1978 Pat. App. LEXIS 3, *6, 201 U.S.P.Q. 315, 317 (BPAI 1978)("Mechanical drawing errors and inconsistencies between the figures of the drawing, which do not preclude the overall understanding of the drawing as a whole are an insufficient basis for holding the design both indefinite and insufficiently disclosed under 35 USC 112.")

Defendants' indefiniteness arguments, and enablement arguments (which enablement arguments are improperly asserted at this time, *see* Opening Brief, p. 11) center on alleged discrepancies involving: (1) the number of cutouts in the lower portion of the spool; (2) the shape and spacing of those cutouts ("u-shaped" versus more "v-shaped"); (3) the width of the two vertical slots (referred to by Defendants as "vertical recessions"); and (4) the shape of the

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    33

trimmer line channel opening.  Defendants' Answering Brief, at pp. 15 – 16 (mis-labelling the fourth as "fifth," and omitting any "third").  Defendants rely on greatly magnified excerpts of the cutouts and the channel opening to find alleged discrepancies.  This is hardly the viewpoint of an ordinary observer or POSITA.  These are precisely the type of drawing inconsistencies that are regularly excused in the analysis of indefiniteness in design patents.  None of these alleged discrepancies, taken alone or together, "preclude the overall understanding of the drawing as a whole" as required by the Federal Circuit.

Defendants also seek to re-open claim construction as to the 'D893 Patent, and make premature invalidity arguments based on a facially invalid on-sale bar theory, which Plaintiff has previously flagged to Defendants as such, all apparently in order to justify a verbal claim construction at this time even though this Court has previously declined such is appropriate at this stage of the case.  More specifically, at footnote 5 of their Answering Brief, Defendants argue:

> As early as April 2022, Defendants informed Torvent that the D893 Patent was invalid based upon an offer-for-sale of the Cobramax (LX-502) product—a product that Torvent contends embodies both asserted design patents—more than one year before the earliest possible priority date, and requested that Torvent dismiss its infringement claim.

However, Defendants' on-sale bar argument is based on the following facially defective allegation in their live answer and affirmative defenses because such fails to allege that there was a commercial offer for sale *by Torvent (and or its predecessor in interest)* that included a quantity term:

> By no later than November 6, 2014, Mr. George Alliss offered to sell the CobraMax product to Raisman for "PRICE F.O.B. DONGGQUAN CHINA $3.90 ea. (Bulk Pkg - Not Assembled)."  On November 7, 2014, Alex Rodrigues of Raisman replied stating that "[w]e can confirm a P.O [sic] for 5.000 pieces right now" and "are ready to place the P.Os [sic]."

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT** 34

[Dkt. 83 at p. 49].  As can be clearly determined as a matter of law, the above allegation by Defendants does *not* allege a commercial *offer* for sale made *by Mr. Alliss or anyone connected to Plaintiff* because Mr. Alliss' email communication omitted any quantity. The quantity of 5,000 pieces was in a response *by* Mr. Rodrigues.  Again, as a matter of law, this quantity was proposed in a responsive email that is a separate invitation for negotiation *from another third-party entity*, Raisman, which in no way is an *offer on behalf of* Mr. Alliss.  Thus, it is highly disingenuous for Defendants to use this on-sale bar invalidity argument at this early stage of the litigation as a purported excuse to justify an early verbal claim construction of the 'D893 Patent and 'D321 Patent.

## B. THE MERE PRESENCE OF DRAWING INCONSISTENCIES DOES NOT RENDER A DESIGN PATENT INVALID AS INDEFINITE

The standard for indefiniteness is controlled by the U.S. Supreme Court's opinion in *Nautilus*:  a patent is indefinite if "its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with ***reasonable certainty***, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig. Instruments, Inc*., 572 U.S. 898, 134 S. Ct. 2120, 2124 (2014) (emphasis added).  The key here is "reasonable certainty." "[A]bsolute precision" is "unattainable."  *Id.* at 2129.

The Federal Circuit has described indefiniteness as "inextricably intertwined" with claim construction.  *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F. 3d 1374, 1379 (Fed. Cir. 1999). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Communs., LLC v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998).  Defendants have the burden to prove indefiniteness by clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc*., 319 F.3d 1357, 1366 (Fed. Cir. 2003)*; see also Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1338 (Fed. Cir. 2008).

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                        35

Defendants complain that Plaintiff is making "conclusory attorney argument" in applying

the opinions in *Junker*, *Crocs*, and *Skechers* to the alleged drawing discrepancies at issue.

Nevertheless, attorney argument is absolutely appropriate for a standard to be applied "as a

matter of law." Defendants rely on the opinion in *Times Three Clothier*, but that opinion also

holds that a court "may" consider extrinsic evidence such as expert testimony as part of claim

construction (and indefiniteness) but that such extrinsic evidence is "'generally of less

significance than the intrinsic record'". *Times Three Clothier, LLC v. Spanx, Inc*, 2014 U.S.

Dist. LEXIS 59448, *5 (S.D.N.Y. 2014).

Defendants struggle to find any authority opposing the standard from the Federal Circuit

in *In re Ron Maatita* in 2018 as to a design patent not being indefinite if the discrepancies "do

not preclude the overall understanding of the drawing as a whole", and Defendants reach back to

1967 to the *Blum* opinion from the Court of Customs and Patent Appeals to argue as to the

"unitary" nature of the design. *See, e.g., In re Ron Maatita*, 900 F.3d at 1375-76*; In re Blum*,

374 F.2d 904, 907 (C.C.P.A. 1967). However, *Blum* does not control the present inquiry, rather

*In re Ron Maatita* does.

The *Blum* opinion dealt with the distinction between dotted and solid lines in a design

patent as interpreted in the MPEP in a context not relevant to the present issue:

> Dotted and broken lines may mean different things in different
> circumstances and all we wish to say here is that in each case it must be made
> entirely clear what they do mean, else the claim is bad for indefiniteness under 35
> U.S.C. § 112. It is the examiner's responsibility to obtain such definiteness. A
> "dominant feature" statement is not calculated to obtain it. Neither is the wording
> of the Manual as there are no portions of a design which are "immaterial" or "not
> important." A design is a unitary thing and all of its portions are material in that
> they contribute to the appearance which constitutes the design. There is a
> distinction to be observed between parts of the total article illustrated, in which a
> new design is embodied, and parts of that article which embody none of the
> design. Such a part is, presumably, what the Manual means by the reference to
> "an immaterial part of the design." Actually, it is no part of the design but a part

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    36

of the article unrelated thereto. It is environment only. The distinction should also be maintained between the design and its environment. It is fatal to clarity to consider the latter as any part of the former, as the Manual appears to do.

*Application of Blum*, 374 F.2d 904, 907, 54 C.C.P.A. 1231, 153 USPQ 177 (C.C.P.A. 1967).

Hence, Blum is distinguishable on its unique and limited facts.

The Federal Circuit case of *In re Ron Maatita* is much more factually on point than *Blum* since the opinion *In re Ron Maatita* directly applies the Supreme Court standard from *Nautilus* in the context of design patents, and also cites to the *Blum* opinion regarding the meaning of dotted and solid lines.  *In re Ron Maatita*, 900 F.3d at 1375-76.

Defendants also rely heavily on the opinions in *Times Three Clothier* and *Masonite*.  In their Answering Brief, Defendants make the statement that these two opinions involve holdings "in which the design patents at issue were held indefinite." Answering Brief, p. 21.   This statement is incorrect.

In *Times Three Clothier*, two design patents at issue were held indefinite, but a third design patent was held not to be indefinite.  *Times Three Clothier, LLC v. Spanx, Inc*, 2014 U.S. Dist. LEXIS 59448, *18 (S.D.N.Y. 2014).  The nature of the claim construction disputes regarding female under garments focused on whether the designs are limited to the exterior of the garment, whether stitching may form a part of the claim designs, and whether different shading requires different materials.  *Id*. at *3.  These are very different design concerns than the cutouts, line channel opening and slots in the spool at issue in the present case.  With respect to one of the patents found indefinite, the discrepancy was a major change to the overall design in the important chest area involving the back of the garment shown in Fig. 2 necessarily extending above the top side of the garment in complete contrast to the design of Fig. 3 and Fig. 4, as shown below:

### 2. Inconsistency as to the Design of the Back of the Garment Renders the '384 Patent Indefinite.

The 🔖 '384 Patent also suffers from a fatal inconsistency. As Times Three concedes, Figure 2 "depicts slightly more of the top back portion underneath the arm portion than [*24] is shown in the other figures." In particular, Figure 2 depicts a garment design with a back extending above the top of the side of the garment, while Figures 3 and 4 depict a garment design with a back ending at the top of the side of the garment.



'384 Patent Figures 1-6

Fig 1   Fig. 2   Fig 3   Fig. 4   Fig. 5   Fig. 6

*Id*. at *23-24.  The above figures show a major change in Fig. 2 to the overall designs shown in the other figures.  With respect to the patent found not indefinite in *Times Three Clothier*, the court resolved alleged discrepancies regarding dotted and solid lines in the area of the neck line as follows:



'377 Patent Figure 2   Suggested Correction to Fig. 1

Suggested changes: solid upper portion and unclaimed perimeter

( portion of )
Fig. 1

The patent examiner did object to Figure 1 on "accuracy" grounds, noting that "since the front portion of the article [the front neckline] is much lower than the rear portion of the article [the rear neckline] (and the rear would be seen from

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    38

the front view)," patentee's counsel "agreed to add the back portion of the article (the outermost line in solid lines and the perimeter of the area in broken lines)." The patent examiner suggested the following correction [see right-hand diagram above].  The patentee did not make the requested change; nevertheless, the '377 Patent was issued. The patent examiner made no such request concerning Figure 2. And it appears from the examiner's suggested correction, which included an "unclaimed perimeter" for the neckline, that the examiner had no objection to the fact that the patentee did not claim the neckline. Spanx has not overcome the presumption of validity accorded the '377 Patent.

*Id*. at *25-26.

The discrepancies leading to a finding of indefiniteness in *Times Three Clothier* are very different than the alleged discrepancies at issue involving minor features of the spool related to the number and shape of a cut-out; barely visible alleged discrepancies in the shape of the trimmer line channel opening that need magnification to even see in any detail; and minor variations in the shape and placing of the vertical slots.  In contrast, the difference in the figures of the '384 Patent of the under garment in *Times Three Clothier* affects the entire shape of the garment on the female body in the important chest area, and changes the entire ornamental appearance on the body.  The facts and circumstances of the *Times Three Clothier* opinion are thus not comparable to the minor discrepancies alleged in the instant case.

Similarly, in *Masonite*, there were only two figures describing the entire design, and as shown below the two figures were very inconsistent with each other in multiple major respects:

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**          39



*Masonite Corp. v. Craftmaster Mfg., Inc.*, No. 9-cv-2131, 2011 WL 13327344 (N.D. Ill. Apr. 28, 2011).  The beveling and contouring of the claimed garage door faces are completely inconsistent with each other.  This is a prime example of the "overall" design not being reasonably certain.  This is very unlike the instant case where there are only minor alleged discrepancies involving small features of the lower portion of the spool that do not implicate the overall design as a matter of law.  The facts and circumstances of *Masonite* are thus inapposite.

Defendants cite to *Masonite* which in turn cites to *HR US LLC* to address the situation, as in this case, where there are several figures that are consistent, and one allegedly is not consistent. *See id.* ("Since this is not a case in which most of the drawings are consistent, such that an aberration was obviously in error, Masonite's reliance on cases to that effect is misplaced.").  In such circumstances, the Eastern District of New York reasoned as follows with respect to finding that a design patent for a "palm pilot holder" was *not* indefinite:

The first inconsistency raised by defendants focuses on the fact that Figure 1, which, unlike Figures 2, 3, and 4, is a perspective view, does not show the side arms overlapping the base, whereas in Figures 2, 3 and 4 the side arms do overlap the base. Because Figures 2, 3 and 4 are consistent with each other, the inconsistency in Figure 1 is inconsequential and does not render the overall appearance of the design unclear. *See Antonious v. Spalding & Evenflo Cos*., Inc., 217 F.3d 849, 1999 WL 777450, at **8 (Fed. Cir. 1999) (unpublished table case) (reversing summary judgment that had invalidated design patents and explaining that where Figures 2 and 3 "plainly showed" a feature that was allegedly shown inconsistently in Figure 4, "a person of skill in the art would primarily look to Figures 2 and 3 to determine the shape of the [disputed feature], and any associated discrepancies in Figure 4 would not be sufficient to preclude a person from gaining an overall understanding of the total substance of the designs"); *cf. Datamize, LLC v. Plumtree Software, Inc*., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (stating, in utility patent case, that "[o]nly claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite" (citations omitted)). It should be noted that although defendants' three experts each point out that Figure 1 is inconsistent, none of these experts explain why a person of skill in the art would not look primarily to Figures 2, 3 and 4 in determining whether the side arms overlap the base, given that those figures show a consistent design.

Two of the other inconsistences cited by defendants also involve the situation where multiple views are consistent and only a single view is inconsistent. Although Figure 1 shows the top of the base as straight, the top of the base is curved in Figures 4 and 5. Similarly, despite the fact that Figure 5 appears to place the side arms toward the top of the base, Figures 1, 4, and 6 all show the side arms toward the bottom of the base. **Again, defendants' experts do not explain why a person of skill in the art would not look to the multiple views that are consistent**.

The final inconsistency pointed to by defendants involves the shape of the side arms. Figure 6 clearly shows trapezoidal side arms whereas the perspective view in Figure 1, which is somewhat unclear as to this feature, appears to show rectangular, rather than trapezoidal, side arms. Although there are no additional views showing the shape of the side arms, invalidation of the patent is not warranted based on this minor potential inconsistency because Figure 6 plainly shows the side arms to be trapezoidal in shape.

*HR US LLC v. Mizco Int'l, Inc.*, 2009 U.S. Dist. LEXIS 27056, * 21 (E.D.N.Y. March 31, 2009)(emphasis added). *HR US LLC* is much closer to the facts of the instant case than *Times Three Clothier* and *Masonite.*

C.   **APPLYING THE CORRECT LAW, THE ALLEGED FOUR (MIS-LABELLED AS FIVE) INCONSISTENCIES DO NOT RENDER THE CLAIM INVALID.**

Defendants' first alleged inconsistency – four versus six cut-out openings – is factually wrong.  Figure 1 is what is referred to as a "perspective view."  As explained by Mr. Smith in his Declaration submitted herewith, Figure 1 contains a very slight error, but it is immaterial. The error is that two sets of two parallel lines (shown in red below) illustrating the perspective view of the two cutouts should have been included in Figure 1 as follows:



Declaration of Fred P. Smith, P.E., CSP (the "Smith Decl."), ¶ 38 (APPX_00000378).  However, as explained by Mr. Smith, a person of skill in the art would not rely solely on a perspective drawing to determine the scope of the claim, but would also look to the front, side, and bottom projected views, *i.e.*, Figs. 4, 5, and 6.  *Id.* at ¶ 39 (APPX_00000379).  As explained by Mr. Smith, "a POSA would understand that the overall design has six bottom evenly spaced cutouts, even if Fig. 1 is somewhat unclear, because Fig. 4, Fig. 5 and Fig. 6 are front, side and bottom views that are all consistent with the component having *six* bottom cutouts."  *Id.*

That the slots would be hardly be viewable from the angle shown in Figure 1 is further demonstrated by looking at a similar view of TTi's own manufacturing drawing for its spool used

in the Accused Products, which is nearly identical to the claimed design of the 'D321 Patent.  In the following drawing, only four cutouts are shown:



*See* Declaration of Brian A. Carpenter, Ex. A, Assembly Drawing of Accused Third Gen. Trimmer Head (TTi00016355)(APPX_00000363).  In the more detailed drawing of the spool, for example, the bottom view of the spool, six slots are shown:



*See* Declaration of Brian A. Carpenter, Ex. B, (TTi00016347) (APPX_00000365); *Cf.* 'D321, Figure 6.

Defendants' second alleged inconsistency – V versus U-shape of the cutouts – is similarly wrong.  It is true that the cutouts in the perspective view of Fig. 1 appear more V-shaped than U-shaped, but the cutouts are not purely U-shaped.  *See* Smith Decl., ¶ 41 (APPX_00000382). Furthermore, at best a POSITA would look at Figure 1 and not draw any definitive conclusion as to the shape of the cutouts without checking the rest of the Figures. *See* Smith Decl., ¶ 42 (APPX_00000383).  In Figures 4 and 5, the cutouts are consistently and clearly shown as U-shaped.  *Id.*  The more detailed views presented in Figures 4 and 5 would be viewed by a POSITA as more definitive than the perspective view drawing of Fig. 1, which is less detailed due to its smaller size.  Viewing the Figures as a whole, just as one must in applying the ordinary

observer test for infringement or invalidity, a POSITA would conclude that the cutouts are U-shaped with the sides flared slightly.  *See* Smith Decl., ¶ 41 (APPX_00000382).

The Defendants' third (mis-labelled as Fourth) alleged inconsistency – the width of the slot, which they confusingly refer to as a "recession" – is similarly wrong.  *See* Defs. Answering Brief, p.16.   Figures 3 and Fig. 4 show consistent views of the slot, as shown:



FIG. 4



FIG. 5

Defendants do not explain: "why a person of skill in the art would not look to the multiple views that are consistent" as discussed above in *HR US LLC* with respect to following the designs consistently shown in Fig. 4 and Fig. 5 with respect to width of the slot, which it refers to as a recession or vertical recession.  Again, to the extent there is any conflict, the

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    45

POSITA would know to look to the more detailed projection view drawings, Figs. 4 and 5 as well as the bottom view of Fig. 6, than to rely on the perspective view drawing of Fig. 1. *See* Smith Decl., ¶¶ 44; 38 – 39 (APPX_00000384, APPX_00000378-379); *see also Antonious v. Spaulding & Evenflo Cos., Inc.,* No. 98-1478*,* 1999 U.S. App. LEXIS 22984, *25 (*Fed. Cir. Aug. 31, 1999)(since Figures 2 and 3 showing golf club heads were consistent with each other, one skilled in the art would assume that Figure 4's inconsistency was an error); *Park B. Smith, Inc. v. CHF Indus., Inc.*, No. 06 Civ. 869(LMM)(JCF), 2008 U.S. Dist. LEXIS, *17 (S.D.N.Y. Mar. 6, 2008) *vacated on other grounds*, 309 Fed. Appx. 411 (Fed. Cir. 2009) (a horizontal line that appeared in two of the ten drawings appeared to be extraneous and was "not a sufficiently serious inconsistency to prevent an ordinary observer, much less a trained designer, from understanding the intended overall design").

Last, Defendants' fourth (mis-labelled as Fifth) alleged inconsistency – channel openings - likewise does not render the claim indefinite.  With respect to the trimmer line channel openings, Defendants are relying on *highly* magnified excerpts of Figures 1, 2 and 4 to find *minute* differences:



Answering Brief, p.18.

As an initial matter, the Patent Trial and Appeal Board has questioned the utility of this approach as to the viewpoint of the POSITA:

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                    46

Indeed, to point out the asserted differences, Skechers has presented
magnified views of minute details of the design along with annotated drawings
that enhance and embellish the minor drawing inconsistencies relative to the
photographs. See Pet. 24–27. **We are not persuaded that a person of ordinary
skill, comparing the design in the photographs with that of the drawings
<u>without such magnified</u> and annotated figures and photographs as provided
by Skechers, would readily, if at all, discern such differences** as Skechers has
presented in its Petition.

*Skechers U.S.A., Inc. v. Nike, Inc.*, IPR2016-00871, p. 23 (PTAB Sept. 29, 2016)(Paper 8)

(emphasis added).

As explained by Mr. Smith, a POSITA would not rely on such magnified, pixelated

versions, and would instead understand the overall design based on the clear "front view"

shown in Fig. 4 as further informed by both sides of Fig. 2.   Smith Decl., ¶ 45

(APPX_00000384).  "Looking at Fig. 4, annotated below, a POSITA can tell that the yellow

is the flange of the spool and that the yellow diamond shaped part is at the outside  edge." *Id.*

"It appears from this view that the green slopes either up or down from the yellow."  Id.



"Fig. 2, annotated below, makes it clear that the green and orange are sloping inward to the

red, blue and gray.  Fig. 3 shows the string coming out in the position of the gray, indicating

that this is a hole." *Id.*  "Defendants only show the left-side of Fig. 2 above, but both are

helpful in understanding the diamond shaped area as shown below":

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                47



**FIG. 2**

*Id.* "To the extent that Fig. 1 is unclear, Fig. 4 clearly shows a somewhat diamond shape opening that allows for a recess to the circular opening.  This open space in the shape on the left-hand side of the diamond-shape is clearly shown in both the left-hand and right-hand sides of Fig. 2 above." *Id.* "Defendants' red arrow and yellow highlighting for Fig. 1 is actually unclear because several of the lines being highlighted may not be in the same plane and it appears that other lines that would form the diamond shape are very light." *Id.* "What is consistent is the lower portion of the diamond-shape (with a partial "elevation" towards the left-end of the lower protrusion) that is clearly shown in Fig. 4 and Fig. 2, and is sufficient to understand the overall design." *Id.*

Contrary to Defendants' assertions, Plaintiff's arguments that the alleged drawing inconsistencies do not render the 'D321 Patent indefinite also do not "equate to a finding that

they impart no ornamental value." (*quoting* Answering Brief at p. 21). Defendants' arguments based on *Sport Dimension* are unavailing. *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016).

The district court in *Sport Dimension* had construed a design patent on a personal flotation device to exclude "armbands and tapered torso" on the basis that such were functional. *Sport Dimension, Inc.*, 820 F.3d at 1321.  The Federal Circuit reversed, holding that it is necessary to "look to the overall design of Coleman's personal flotation device disclosed in the D'714 patent to determine the proper claim construction."  *Id*. at 1323.  This holding is inapposite to the issue of whether the alleged drawing discrepancies "preclude the overall understanding of the drawing as a whole" under the test from *In re Ron Maatita*.

Based on the reasoning of the opinions in *Junker*, *Crocs*, *Skechers*, and *HR US LLC*, the alleged four drawing discrepancies in the 'D321 Patent regarding number and shape of cutouts, slot size, and trimmer line channel openings do not render the 'D321 Patent invalid as indefinite. Smith Decl., ¶ 46 (APPX_00000386).

### D.   VERBAL CLAIM CONSTRUCTION IS NOT NECESSARY AT THIS STAGE OF THE CASE

Defendants make three arguments in an attempt to justify requiring a verbal claim construction at this point in the case, less than two months after this Court's Order (Dkt. 118, March 20, 2023) (rejecting Defendants' verbal construction of the 'D893 Patent): (1) Defendants' non-infringement defense relates to the upper cylindrical portion of the spool, guide channels and the lower cylindrical portion; (2) alleged validity issues regarding prior art and priority dates; and (3) alleged double-patenting.  In short, these issues existed when the Court previously ruled in March, and fact depositions have currently not yet commenced, expert reports have not been served, and experts have not yet been deposed. In its Opening Brief,

Torvent explained why no verbal construction is required or needed. Open Br., p. 3-4, *see also* Jt. Cl. Constr. Br. [Dkt. 108], pp. 96-98.

With respect to non-infringement theories, the absence of a verbal claim construction does not prevent Defendants from preparing non-infringement defenses.  In fact, as shown by *Egyptian Goddess*, most design patent cases are resolved without a verbal claim construction. Each side's respective expert simply applies the "ordinary observer" test to prove or disprove infringement.  The jury decides which to believe.

Defendants attempt to raise a number of invalidity defenses that are nothing but red-herrings as to the task at hand, the construction of the 'D321 Patent.  *See* Response Brief, pp. 24 – 25.  Defendants' assertion of the on-sale bar invalidity defense as an excuse to warrant a detailed verbal construction at this time is disingenuous at best.  Defendants' on-sale bar argument is based on the following facially defective allegation in the live answer and affirmative defense because such fails to allege that there was a commercial offer for sale *by Torvent (and or its predecessor in interest)* that included a *quantity*, and, in fact, merely shows a quote:

> By no later than November 6, 2014, ***Mr. George Alliss offered to sell the CobraMax product to Raisman for "PRICE F.O.B. DONGGQUAN CHINA $3.90 ea. (Bulk Pkg - Not Assembled)*.**" On November 7, 2014, Alex Rodrigues **of <u>Raisman replied</u>** stating that "[w]e can confirm a P.O [sic] for 5.000 pieces right now" and "are ready to place the P.Os [sic]."

*TTi's Amended Answer* [Dkt. 83], p. 49 (emphasis added); *see also* Dkt. 85, pp. 49 - 50; Dkt. 86, p. 49.  As can be clearly determined as a matter of law, the above allegation by Defendants (in italics) as to what Mr. Alliss "offered" does not constitute a "commercial offer for sale."  *Phaff v. Wells Elcs., Inc.*, 525 U.S. 55 (1998); *see also Helsinn Healthcare S.A. v. Teva Pharmaceuticals, USA*, 139 S. Ct. 628 (2019).  Under the U.S. Supreme Court's on-sale bar test in *Pfaff*, one of the

required elements is a "commercial offer for sale". *Pfaff v. Wells Electronics*, *Inc.,* 525 U.S. 55, 68-69 (1998). The Federal Circuit has explained:

> The Supreme Court's formulation of a "commercial offer for sale" in *Pfaff* also supports consulting the UCC. The Supreme Court has also cited the Restatement of Contracts with approval in the commercial contract law context…. In any given circumstance, who is the offeror, and what constitutes a definite offer, requires looking closely at the language of the proposal itself. Language suggesting a legal offer, such as "I offer" or "I promise" can be contrasted with language suggesting more preliminary negotiations, such as "I quote" or "are you interested".

*See, e.g., Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041,1048 (Fed. Cir. 2001).

The statement by Mr. Alliss in italics above did not include the quantity of 5,000 pieces (or any other quantity). Quantity is a material term that must be present for a statement made in negotiation (such as the statement by Mr. Alliss quoted above) to constitute a commercial offer for the sale of goods. *See*, e.g., *Gordon Tantum, Inc. v. Chef Solutions, Inc.*, 2008 U.S. Dist. LEXIS 59025, * 23 – 24 (D. N.J. July 28, 2008); *Jo-Ann, Inc. v. Alfin Fragrances, Inc.*,731 F. Supp. 149, 156 (D. N.J. 1989); *Meduri Farms, Inc. v. Dutchtecsource B.V.*, 2017 U.S. Dist. LEXIS 199793, *19 (D. Oregon December 5, 2017); *American Original Corp. v. Legend, Inc.*, 652 F. Supp. 962, 968 (D. Del. 1986). Without this crucial component, the alleged offer was not a commercial offer for sale. *Id*. Thus, Mr. Alliss' email constituted merely preliminary negotiations falling short of an offer for sale that could lead to invalidity under the on-sale bar. *See*, e.g., *Group One, Ltd v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001); *Cf. Junker v. Medical Components, Inc. v. Martech Medical Products, Inc.*, 25 F.4th 1027 (Fed. Cir. 2022); *Merck & Cie v. Watson Laboratories, Inc.*, 822 F.3d 1347, 1351 (Fed. Cir. 2018).

As alleged by Defendants, the quantity term, 5,000 units, was not mentioned by Mr. Alliss. Instead, the quantity term – 5,000 units -- was proposed in a separate email from *third-party entity*, Raisman. The Defendants' affirmative on-sale defense is facially defective and not

supported by the operative pleading.  Thus, Defendants' attempt to use the on-sale bar invalidity argument at this stage of the litigation (*i.e.,* before depositions, for example) as a purported excuse to justify an early verbal claim construction of the 'D893 Patent and 'D321 Patent is without merit.  Even if the alleged on-sale bar defense was not facially defective, it would have nothing to do or be affected by the construction of either or both design patents.

Defendants attempt to make use of Torvent's attempt to obtain a certificate of correction to add a claim of priority to the '807 Patent.  *See* Response, p. 24, n. 4.  The Certificate of Correction regarding the priority date for the 'D893 Patent would have rendered the "on sale" issue moot, but the absence of the Certificate of Correction after the Patent Office withdrew it does not change the required legal conclusion that the on-sale bar does not apply as to the 'D893 or 'D321 Patents because no commercial offer for sale was made as a material term, quantity, was missing.

The alleged double-patenting arguments as to the 'D893 and 'D321 Patents have nothing to do with claim construction, and do not justify or require a verbal claim construction at this stage of the litigation.  The 'D321 Patent cites to the 'D893 Patent on its face, so the examiner presumably determined that there was no double-patenting (statutory or obviousness-type).  The 'D321 Patent is presumed valid under 35 U.S.C. § 282.

The affirmative defense of statutory double patenting arises under 35. U.S.C. § 101.  However, for the defense to apply, two claims must be shown to be identical, so a patentee avoids the application of the doctrine "by drafting claims that vary slightly from the earlier patent."  *Geneva Pharms, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003).  Here, there are differences between the drawings of the 'D893 Patent and 'D321 Patent, and, therefore, statutory double-patenting has no merit.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                    52

Obviousness-type double patenting, a judicially created doctrine, is also an affirmative defense. *Symbol Techs., Inc. v. Opticon, Inc*., 935 F.2d 1569, 1580 (Fed. Cir. 1991). Just like the analysis of a claim in view of prior art, the crux of the defense is whether two patents are so very much alike as to render one obvious in view of the other. *Id*. (*quoting Gerber Garment Tech v. Lectra Systems*, 916 F.2d 683, 686 (Fed. Cir. 1990)). The purpose of the judicially created doctrine is to prevent a patentee from extending the life of the patent beyond that of a parent. *Id*. However, it by no means is a complete defense. Any finding of obviousness-type double patenting can be nullified by a patentee by filing a terminal disclaimer, even during or after litigation, disclaiming the term beyond the term of the parent. *Boehringer Ingelheim Intern. v. Barr Laboratories, Inc*., 592 F 3d 1340, 1347 (Fed. Cir. 2010). This is true even as to design patents. *Apple, Inc. v. Samsung Elecs Co*., 920 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2013). There is nothing about this rarely raised affirmative defense that would justify risking error by reducing either or both of the 'D893 and 'D321 Patents to a verbose verbal description as advocated by Defendants here.

Again, Torvent contends that no verbal construction is necessary. *See* Opening Br., pp. 3-4; *see also* Joint Claim Construction Brief, [Dkt. 108] pp. 97-98. Alternatively, to the extent that any verbal claim construction is needed, it is more properly handled at the summary judgment or later stage such as jury instructions once the "ornamental" versus "purely functional" issues have been more thoroughly developed. *See Reddy v. Lowe's Companies, Inc*., 60 F. Supp. 3d 249, 254 (D. Mass. 2014)("many courts have held that inquiries into functionality or prosecution history are more appropriate at a later stage in the litigation, such as summary judgment or jury instructions")(*citing Depaoli v. Daisy Mfg. Co., Inc*., 2009 WL 2145721 (D. Mass. July 14, 2009)).

### E. <u>CONCLUSION</u>

Torvent requests that the Court find that no verbal claim construction of the 'D321 Patent is needed, and further deny Defendants' invalidity arguments and find the patent valid, as is presumed.  Alternatively, to the extent the Court finds that the 'D321 Patent needs some verbal construction, Torvent requests that the Court nevertheless deny Defendants' verbose proposed construction as the Court did as to the 'D893 Patent, "but the Parties may re-raise the issue at a later time should it become necessary" (Dkt. 118 at p. 41).

## IV. <u>DEFENDANTS SUR-REPLY POSITION</u>

### A. <u>INTRODUCTION</u>

The tact taken by Torvent's Reply showcases the weakness of its positions and ultimately fails to refute the D321 Patent's invalidity.  Torvent begins, not by addressing Defendants' invalidity arguments head-on, but by mischaracterizing them.  *See supra* Torvent Rep. at 35-37. No reasonable reader could conclude that Defendants apply the wrong legal standard—Defendants repeatedly quote *In re Maatita* and directly explain how the identified inconsistencies individually and collectively affect the overall visual impression of the design, thereby rendering the D321 Patent indefinite and non-enabled.  *See, e.g.*, <u>*supra*</u> Defs.Resp. at 18-20, Section B.2.

When addressing Defendants' actual arguments, Torvent concedes that inconsistencies exist and leaves many of Defendants' other assertions wholly unrebutted.  Torvent and its expert (Mr. Smith) notably ***do not contest*** Mr. Hatch's detailed analysis identifying the ordinary observer, analyzing why the ordinary observer would employ a discerning perspective here, and explaining how one applying that perspective would lack reasonable certainty regarding the scope of the claimed design.  Torvent improperly eschews any analysis of the ordinary observer's perspective and skips ahead to conclusory arguments that the inconsistencies must be immaterial simply because they are purportedly "small."  Such arguments are legally and factually flawed, and the

Court should hold the D321 Patent to be indefinite and non-enabled.

Regarding construction, Torvent and Mr. Smith likewise provide no rebuttal on the key issue that establishes the need to construe. On this record, it remains ***undisputed*** that the D321 Patent contains numerous functional features. Torvent spends pages inappropriately arguing the merits of Defendants' invalidity theories but, in doing so, inadvertently proves Defendants' point. The Court need ***not*** wait until later to ferret out whether this case involves issues that require, or would be facilitated by, construction. Specific, well-defined infringement and invalidity issues that merit construing the design patents-in-suit already exist. Thus, to the extent the Court does not find the D321 Patent invalid, it should construe it (and the D893 Patent) as Defendants propose.

## B.    THE D321 PATENT IS INVALID AS INDEFINITE AND NON-ENABLED

### 1.    THE D321 PATENT UNDISPUTEDLY SHOWS INCONSISTENCIES

Although Torvent refers to the inconsistencies Defendants identify as "alleged" inconsistencies, it does not actually dispute that the D321 Patent depicts the identified features differently across its figures. Torvent agrees that at least Figure 1 shows only four cutouts, and not six. *Supra* Torvent Rep. at 42 (calling the omission of two cutouts an "error"). Torvent agrees that Figure 1 shows "more V-shaped" cutouts than the other figures. *Id.* at 44. Torvent does not contest that Figures 1 and 6 depict the size and width of the recession (or "slot") differently. *Id.* at 45 (asserting only that Figures 3 and 4 are "consistent"). And Torvent agrees that the trimmer line channels shown have "differences." *Id.* at 46-47 (detailing structures shown in Figure 4 that are not present in Figures 1 and 2).

### 2.    UNDER THE PERSPECTIVE OF THE ORDINARY OBSERVER, THE INCONSISTENCIES ARE MATERIAL

The true dispute here lies with the ***materiality*** of these inconsistencies to an ordinary observer. *See, e.g.*, *supra* Torvent Rep. at 42 (calling the "error" in number of cutouts "very

slight"), 12 (arguing that certain figures are "more definitive" regarding cutout shape), 13 (arguing that certain figures are purportedly "more detailed" regarding the recessions), 14 (same for trimmer line channels).  Torvent's and Mr. Smith's arguments fail, however, because they do not apply the "ordinary observer's" perspective.  *See, e.g.*, *In re Maatita*, 900 F.3d at 1376-77 (adopting for indefiniteness the same "perspective of the ordinary observer" used for infringement).

This "ordinary observer" perspective traces back to *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871), where the Supreme Court described the ordinary observer as "giving such attention as a purchaser usually gives," as well as "persons in the trade."  *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham*).  The Federal Circuit sitting *en banc* clarified this standard further, explaining that the ordinary observer "is conversant with the prior art," such that "[w]here there are many examples of similar prior art designs, . . . differences . . . that might not be noticeable in the abstract can become significant."  *Id.* at 678.

Mr. Hatch's analysis proceeds precisely in line with these standards.  Before considering the D321 Patent's inconsistencies, Mr. Hatch first identifies the ordinary observer (a "homeowner, handyman or professional landscaper") and analyzes what level of care such individuals ordinarily apply to trimmer head purchases, discussing in turn the products' cost, the need for information regarding "usability differences," and the "great deal of information [provided by sellers] for purchasers to review."  Ex. B at ¶¶ 21-27 (APPX_00000034-38) (concluding that the ordinary observer would compare spool designs with "a very high degree of attention" and "bring a perceptive eye to that comparison").  Mr. Hatch likewise considers the prior art's effect on the ordinary observer's perspective, noting that "the art is crowded with slight variations of spools" and that "a substantial amount of the visual features of the Claimed Design were already commonplace among the prior art."  *Id.* ¶¶ 35-37 (APPX_00000043-45) (concluding that

"knowledge of the relevant prior art would, in this case, help attune the ordinary observer to differences between designs"). As he explains, here "[t]he ordinary observer's attention would naturally be drawn to other distinguishing features that could separate the claimed design from the prior art, such as the particular size, shaping, positioning, and orientation of the channel opening, the vertical recessions, and the cutouts." *Id.* ¶ 37 (APPX_00000045).

Neither Torvent nor Mr. Smith rebut any of Mr. Hatch's analysis regarding the ordinary observer's perspective. Indeed, they provide ***no analysis whatsoever*** of who the ordinary observer is, what level of care their purchasing decisions would entail, or how the prior art would or would not affect their perspective. *See, e.g.*, Smith Decl. ¶¶ 23-35 (APPX_00000373-376) (addressing only the separate "level of ordinary skill" standard). Notably, Mr. Smith only mentions the "ordinary observer" ***once***—when stating his overall opinion. *Id.* ¶ 46 (APPX_00000386). That Torvent gives only lip service to the ordinary observer's perspective leaves its analysis fundamentally flawed, and Mr. Smith's opinions unreliable. As in *Egyptian Goddess*, because Mr. Smith wholly failed to consider the effect of the prior art on the ordinary observer's perspective, his opinions are insufficient to demonstrate a genuine issue of fact. *See* 543 F.3d at 681 (affirming summary judgment of non-infringement despite declaration from plaintiff's expert (Ms. Eaton) because that expert's "reference to the prior art [] is limited to [a] single, and conclusory, comment").

Additionally, Torvent and Mr. Smith do ***not*** rebut Mr. Hatch's analysis applying the perspective of the ordinary observer to the inconsistencies at issue. They do not contest that the commonality of "the main shapes of the spool and the lower cylindrical portion" among the prior art causes "the eye of the ordinary observer [to be] immediately drawn to perceived differences from those known shapes," nor that the "[t]he ordinary observer's eye would immediately be

drawn to the locations where the smooth impression of the cylindrical shape is disrupted" by the cutouts and recessions.   Ex. B at ¶¶ 44 (APPX_00000049), 51 (APPX_00000051), 59 (APPX_00000054).   They likewise do not rebut Mr. Hatch's opinions that given features (individually and collectively) impart a more *jagged* overall visual impression as shown in certain figures, while providing a different "smoother, *rounded* overall visual appearance" as shown in others. *See, e.g.*, *supra* Defs. Resp. at 18-19 (summarizing such opinions).   Nor do they rebut Mr. Hatch's opinions that the D321 Patent's disclosure is non-enabling because a POSA would not know which version of the cutouts, recessions, and trimmer line channel openings to implement when attempting to "make and use" the claimed design.   Ex. B at ¶¶ 47 (APPX_00000049), 54 (APPX_00000052), 61 (APPX_00000054).

Accordingly, Defendants respectfully submit that the unrebutted evidence applying the ordinary observer's perspective establishes the materiality of the inconsistencies at issue, and that a POSA would be unable to make and use the claimed invention.

### 3.   TORVENT'S REBUTTAL ARGUMENTS ARE INAPPOSITE

Torvent and Mr. Smith attempt to rebut Defendants' arguments and Mr. Hatch's opinions in two main ways: (1) characterizing the inconsistencies as "small" or "very slight"; and (2) arguing that a "person of skill in the art" would pick and choose certain figures over others.   Each of these positions is flawed.[9]

*First*, even if Torvent were correct that the D321 Patent's inconsistencies only involved "small" features or "slight" differences, that would not end the inquiry.   The issue here is

---

[9] At certain points, Torvent and Mr. Smith also nit-pick the illustrative figures Defendants provide to help convey their contentions.   This critique is belied by Torvent's and Mr. Smith's own reliance on similar annotations.   Regardless, even if Torvent's critiques had merit, it has identified no issues with Mr. Hatch's annotated figures.   *See* Ex. B ¶¶ 41 (APPX_00000046) (tbl. 4 addressing the cutouts), 45 (APPX_00000049) (tbl. 5 addressing the slots), 50 (APPX_00000050) (tbl. 6 addressing the trimmer line channels).

materiality, and the Federal Circuit has made clear that even "differences . . . that might not be noticeable in the abstract can become significant" when considered from the perspective of the ordinary observer. *Egyptian Goddess*, 543 F.3d at 678.  As discussed above, Mr. Hatch provides unrebutted testimony explaining why the ordinary observer's eye would be drawn to the inconsistencies at issue and how those inconsistencies materially alter the overall visual impression of the design as a whole.[10]

By focusing on the inconsistent features purportedly being "small" or "slight," Torvent also fails to consider how those features' partial functionality confirms their materiality to the D321 Patent's overall visual impression.  *In re Blum* stands for the proposition that all "portions" of "the total article illustrated" that "contribute to the appearance which constitutes the design" (*i.e.*, all ***ornamental*** aspects of the depicted article) are "material."  374 F.2d at 907.  And although *Blum* specifically analyzed environmental v. ornamental lines, its reasoning applies equally to partially functional features.  Like environmental lines, functional aspects are "parts of the total article illustrated" that impart no ornamental value.  *See Sport Dimension*, 820 F.3d at 1320 ("[T]he scope of a design patent claim must be limited to the ornamental aspects of the design.").  Conversely, the ***ornamental*** aspects of those partially-functional features—here the particular sizes, shapes, positions, and orientations chosen for the cutouts, recessions, and trimmer line channel openings—do "contribute to the appearance which constitutes the [claimed] design," regardless of how "small" or "slight" Torvent claims they may be.  Thus, under *Blum*, the inconsistencies shown regarding the sizes, shapes, positions, and orientations of the cutouts,

---

[10] Contrary to Torvent's statement, attorney argument cannot substitute for evidence, even when issues are decided as a matter of law.  *Compare* Torvent Rep. at 4, *with Seed Lighting*, 2005 WL 1868152, at *9 ("The bare, unsupported belief of [] counsel that the vagaries are 'insubstantial,' however, is not sufficient to overcome" judgment of indefiniteness).

recessions, and trimmer line channel openings (the ornamental aspects of partially functional features) are "material."  *See* 374 F.2d at 907.

*Second*, Torvent's argument that a POSA would pick-and-choose certain figures over others is flawed in numerous respects.  Torvent and Mr. Smith repeatedly offer analysis under the wrong standard—what a POSA (or "POSITA") would do, rather than what a POSA "viewing the design as would an ordinary observer" would do.  *In re Maatita*, 900 F.3d at 1377; Smith Decl. ¶¶ 39, 41, 42, 45 (APPX_00000379-85).   The argument is also self-contradictory.   Torvent repeatedly argues that specific figures should be ignored, but elsewhere recognizes that "one must" "[v]iew[] the Figures as a whole" "in applying the ordinary observer test."  *Supra* Torvent Rep. at 44.

Torvent's and Mr. Smith's specific reasons for selecting certain figures over others also do not make sense, which illustrates the arbitrary nature of their choices.  Mr. Smith, for example, argues that the "perspective view" of Figure 1 "would not show these [cutout] features hardly at all," Smith Decl. ¶ 39 (APPX_00000379, yet even a cursory glance at Figure 1 distinctly shows four triangular cutouts.  Mr. Smith incorrectly argues that Figure 5 indicates that six cutouts exist.   Smith Decl. ¶ 39 (APPX_00000379); *but see* Ex. B, ¶ 43 (APPX_00000048) (Mr. Hatch opining that "[F]igure 5's two visible cutouts are at least suggestive that the lower cylindrical portion, like figure 1, has only four cutouts in total.").  And Mr. Smith nonsensically suggests that a POSA would be "further informed" regarding the trimmer line channel openings' shape "by both sides of Fig. 2," but somehow not by Figure 1's highly-similar viewpoint.  *See* Smith Decl. ¶ 45 (APPX_00000384).

Last, Torvent's and Mr. Smith's efforts to pick-and-choose between the D321 Patents' inconsistent figures represent a misplaced attempt to analogize this case to *HR U.S. LLC v. Mizco*

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                    60

*Int'l, Inc.*, No. 07-cv-2394-DGT-JO, 2009 WL 890550 (E.D.N.Y. Mar. 31, 2009).  *See supra*

Torvent Rep. at 40-41.  *Mizco*'s reasoning is inapposite because it depends upon the stricter pre-

*Nautilus* standard for indefiniteness in which "[o]nly claims 'not amenable to construction' or

'insolubly ambiguous' are indefinite."  *See Mizco*, 2009 WL 890550 at *8 (quoting same).  The

*Mizco* court took it upon itself—in the absence of persuasive arguments by plaintiff—to resolve

an ambiguity That It did not consider insoluble, and it did so without any reference to the

perspective of the ordinary observer in its indefiniteness analysis.  *See id.*  Even if proper at the

time, that is no longer the applicable inquiry—design patents must be sufficiently clear to permit

a POSA, "viewing the design as would an ordinary observer," to "understand the scope of the

design with reasonable certainty."  *In re Maatita*, 900 F.3d at 1377.

Moreover, by the *Mizco* court's own reasoning in distinguishing *Seed Lighting*—in which

the design patent was held indefinite—this case would far more resemble *Seed Lighting*.  *Mizco*,

2009 WL 890550 at *8.  Here, as in *Seed Lighting*, the "mistakes and ambiguities in the drawings"

span "major components" of the depicted article.  *See, e.g.*, Ex. B at ¶ 62 (APPX_00000054)

(illustrative figure showing that "[a]lmost all of the distinguishing visual features" of the D321

Patent's depicted spool "are inconsistent between the figures").

For these reasons, the Court should reject Torvent's arguments, apply the ordinary

perspective required by Federal Circuit law, and find the D321 Patent indefinite.

### C.    IF NOT INDEFINITE, THE COURT SHOULD CONSTRUE THE D321 AND D893 PATENTS AS DEFENDANTS PROPOSE

Torvent offers no new argument against Defendants' contentions regarding functionality

and the resulting need for construction.  It therefore remains undisputed on this record that the

D321 Patent includes "numerous functional elements," and Federal Circuit law is clear that such

circumstances "necessarily mandate[] a narrow construction."  *Richardson*, 597 F.3d at 1294-95.

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                              61

The only remaining issue for the court to decide, then, is **when** to provide that construction. Torvent suggests that the Court should wait until "the summary judgment or later stage such as jury instructions once the 'ornamental' versus 'purely functional' issues have been more thoroughly developed." *Supra* Torvent Rep. at 53. This assertion only illustrates the self-serving nature of Torvent's continuing refusal to address Defendants' functionality arguments. Torvent seems to believe that by unilaterally refusing to articulate its positions regarding functionality, it can create the (incorrect) impression that further development still needs to occur. The Court should not reward this behavior. Torvent has had over a year to articulate its functionality contentions in response to Defendants' discovery requests, or in either of the two rounds of claim construction briefing that have now occurred. Torvent has **chosen** not to advance positions this entire time and should not be permitted to advance new positions moving forward.

Torvent tellingly does not (and cannot) contest Defendants' assertion that construing the asserted design patents would lead to judicial economy and promote efficient resolution of this case. Early construction clearly will avoid unnecessary expenditure of resources and requiring the parties and their experts to perform multiple, hypothetical analyses throughout fact and expert discovery.

Torvent likewise cannot reasonably contest that Defendants have identified multiple infringement and invalidity arguments already at-issue in this litigation for which construction will be required and/or would be helpful. Torvent confusingly argues the merits of these theories,[11]

---

[11] Defendants reserve their argument on the merits of these theories for an appropriate stage of the litigation but note that many of the positions articulated by Torvent's Reply are facially wrong under even Torvent's own cited caselaw. *See, e.g.*, *Junker v. Med. Components, Inc.*, 25 F.4th 1027, 1034 (Fed. Cir. 2022) ("The standard Mr. Junker proposes—that the offer must specify the exact amount of product the buyer desires to qualify as an offer for sale—is too stringent."); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998) (affirming that a **customer's** purchase order constituted

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                                        62

which misses the point. *See supra* Torvent Rep. at 49-53. The Court requested information regarding Defendants' invalidity theories at the December 2022 claim construction hearing to help it understand the need for construction of the D893 Patent, *see* D.I. 111 at 92:2-9, and Defendants simply wish to ensure the Court has up-to-date information to aid its decision here. Ironically, Torvent's effort to substantively address the merits only proves Defendants' point further—these infringement and invalidity issues are real and contested, and the Court need not wait until summary judgement or pre-trial proceedings to confirm so.

Thus, Defendants respectfully request that, if the Court does not find the D321 Patent indefinite, it construe the D321 Patent as Defendants propose.

---

a qualifying "offer for sale," and noting that "acceptance of the purchase order . . . makes it clear that such an offer had been made").

Respectfully submitted,

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

Brian A. Carpenter
Theodore G. Baroody
J. Miguel Hernandez
CARSTENS, ALLEN & GOURLEY, LLP
7500 Dallas Parkway, Suite 300
Plano, Texas 75024
(972) 367-2001
(972) 367-2002 Fax
carpenter@caglaw.com
baroody@caglaw.com
hernandez@caglaw.com

ATTORNEYS FOR PLAINTIFF
TORVENT LLC AND THIRD-PARTY
COUNTERCLAIM CO-DEFENDANTS
TORVIAN, INC. AND FIRST-TO-INVENT,
LLC

Dated: June 16, 2023

MORGAN, LEWIS & BOCKIUS LLP

*/s/Amy M. Dudash*
Amy M. Dudash (DE Bar No. 5741)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Phone: 302.574.3000
Fax: 302.574.3001
amy.dudash@morganlewis.com

Jason C. White (admitted *pro hac vice*)
Nicholas A. Restauri (admitted *pro hac vice*)
Michael T. Sikora (admitted *pro hac vice*)
Eugene S. Hwangbo (admitted *pro hac vice*)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
Phone: 312.324.1000
Fax: 312.324.1001
jason.white@morganlewis.com
nicholas.restauri@morganlewis.com
michael.sikora@morganlewis.com
eugene.hwangbo@morganlewis.com

Robert Ehrlich (admitted *pro hac vice*)
1000 Louisiana St., Suite 4000
Houston, TX 77002-5006
Telephone: 713.890.5000
Fax: 713.890.5001
robert.ehrlich@morganlewis.com

*Attorneys for Defendants, Techtronic*
*Industries Co., Ltd.; Techtronic Industries*
*North America, Inc.; One World*
*Technologies, Inc.; Homelite Consumer*
*Products, Inc.; Hart Consumer Products,*
*Inc., Defendant Home Depot, U.S.A., Inc.,*
*and Defendant Walmart Inc.*

**JOINT CLAIM CONSTRUCTION BRIEF FOR D321 PATENT**                64